**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (SBN 216752)
Nicholas J. Bontrager (SBN 252114)
369 S. Doheny Dr., #415
Beverly Hills, CA 90211
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@attorneysforconsumers.com
nbontrager@attorneysforconsumers.com
***Attorneys for Plaintiff***

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ARI FRIEDMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** ) | Case No. CV13-00818 CBM (ANx) |
| ) | |
| Plaintiff, ) | **CLASS ACTION** |
| ) | |
| ) | **NOTICE OF AND PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| vs. ) | |
| ) | **Date:  April 8, 2014** |
| ) | **Time: 10:00am** |
| **LAC BASKETBALL CLUB, INC.,** ) | **Ctrm: 2** |
| ) | |
| Defendant. ) | **Hon. Consuelo B. Marshall** |
| ) | |
| _____ ) | |

///

///

///

1

**<u>TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD</u>:**

**PLEASE TAKE NOTICE** that on April 8, 2014, at 10:00 a.m., before the United States District Court, Central District of California, Courtroom 2, 312 N. Spring Street, Los Angeles, CA 90012, Plaintiff ARI FRIEDMAN ("Plaintiff") will move this Court for an order granting preliminary approval of the class action settlement detailed in Plaintiff's memorandum of points and authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Respectfully submitted this 4th day of March 2014.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:   <u>/s/ Todd M. Friedman</u>
      Todd M. Friedman
      Attorney for Plaintiff

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3</u>

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the contents of the instant motion.   D efendant does not oppose Plaintiff's motion and requested relief and will file a statement confirming same.

Respectfully submitted this 4th day of March 2014.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.


By:   <u>/s/ Todd M. Friedman</u>

Todd M. Friedman
Attorney for Plaintiff

# **TABLE OF CONTENTS**

I.    Introduction ........................................................................................................6

II.   Statement of facts .......................................................................................... 11

  A.   Factual Background .................................................................................... 11

  B.   Proceedings to Date .................................................................................. 11

III.  The Settlement ............................................................................................... 12

  A.  The Settlement Class....................................................................................12

  B.  Settlement Benefits to the Class...…………………………………………....13

  C.  Benefit to Class Members. ........................................................................ 15

  D.  Non-Monetary Benefit to Class Members……………………………………16

  E.  Class Notice………………………………………………………………….....16

  F.  Scope of Release. ....................................................................................... 17

  G.  Opportunity to Opt-Out and/or Object………..………………………………18

  H. Termination of Settlement. ......................................................................... 18

  I. Payment of Notice and Administrative Costs by Defendant. ........................... 18

  J.  Class Representative's Application for Incentive Awards.............................. 18

  K.  Class Counsel's Application for Attorneys' Fees, Costs, and ....................... 19
Expenses. ......................................................................................................... 19

IV.   Argument ....................................................................................................... 19

  A.  Legal Standards for Preliminary Approval of a Class Action Settlement. ...................... 19

    1.     Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating
this Case. ........................................................................................................ 22

    2.     Defendant's Agreement to Provide Class Members with Free Tickets and/or Savings
Vouchers is a Fair and Substantial Benefit to the Class. .................................. 23

    3.     The Settlement Was Reached As the Result of Arms-Length Negotiation, Without
Collusion, With the Assistance of an Independent Mediator. .............................. 25

    4.     Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to
the Class. ........................................................................................................ 26

B. The Court Should Preliminarily Certify the Class for Purposes of Settlement. .............26

 1. The Proposed Class Is Numerous..................................................................26

 2. The Commonality Requirement Is Satisfied, Because Common Questions of Law and Fact Exist. ...............................................................................................27

 3. The Typicality Requirement Is Met. ...........................................................27

 4. The Adequacy Requirement Is Satisfied. ....................................................28

 5. Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only. ...........................................................................29

 6. Class Treatment for Settlement Purposes is Superior to Individual Resolutions.........30

C. The Proposed Method of Class Notice Is Appropriate. ...................................31

D. The Court Should Appoint the Class Representative and Appoint Class Counsel..........34

V. Conclusion .....................................................................................................36

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff, ARI FRIEDMAN (hereinafter referred to as "Plaintiff" or "Class Representative"), individually and on behalf of the "Settlement Class" (as defined below) hereby submits this application for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation").[1]  Defendant, LAC BASKETBALL CLUB, INC. (hereinafter referred to as "Defendant" or "LAC") does not oppose Plaintiff's instant application and will submit a Notice of Non-Opposition with this Honorable Court confirming same (Plaintiff and Defendant shall collectively be referred to as the "Parties").  The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement") filed herewith as Exhibit 1.[2]

The proposed Settlement resulted from the Parties' participation in extensive settlement discussions including an all-day mediation session before Judge Leo S. Papas (Ret.), former federal Magistrate Judge for the United States District Court for the Southern District of California, on October 15, 2013 in addition to intensive settlement discussions facilitated by Judge Papas in the subsequent months following the October 15, 2013 mediation.  Counsel for LAC and counsel for Plaintiff also had numerous telephone conferences, in–person meetings, and exchanged numerous emails regarding settlement and had several lengthy discussions and in-person negotiations.  A s a result, the Settlement provides for a substantial financial benefit to members of the Settlement Class.  According to data available to Defendant, there are approximately 132,098 unique United States cell phone numbers that likely have received a text message

---

[1] Plaintiff and Defendants are collectively referred to as the "Parties."
[2] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

from or on behalf of Defendant between February 6, 2009 and the date that this Honorable Court preliminarily approves the settlement, the "Class Period". Therefore, for purposes of this settlement, those cell phone owners whose cell phone numbers are listed in the data available to Defendant constitute all members of the Settlement Class.

The compromised settlement reached with the guidance of Judge Papas will provide members of the Settlement Class ("Settlement Class Members" or "Class Members"), on a claims-made basis, *either* of following:

> A). Two (2) free tickets to one (1) Los Angeles Clippers' home game at the Staples Center in Los Angeles, California for a game to be played on October 8, 17, 22 or 24, 2014 (located predominantly in Sections 301-334) ("Two Ticket Option"). Th e Two Ticket Option has a fair market value of between $30-$50 (face value of each ticket will be between $15 and $25 each); *or;*

> B). One (1) free ticket to one (1) Los Angeles Clippers' home game at the Staples Center in Los Angeles, California for a game to be played on October 8, 17, 22 or 24, 2014 (located predominantly in Sections 301-334) (the single ticket has a fair market value of between $15-25), *and* a savings voucher in the amount of twenty dollars ($20) that can be used toward the purchase of merchandise at the Team LA Store located in the Staples Center, or at www.clippersstore.com ("Single Ticket Option").

The free tickets claimed pursuant to the Two Ticket Option and Single Ticket Option will be distributed on a first come first serve basis, and will be filled beginning with the highest valued tickets in the specified sections (approximately 8,000 tickets are available for the October 2014 home games). If

more free tickets are claimed than are available in the October 2014 home games in the Sections specified in Paragraphs (2)(A)(i) and (2)(A)(ii) above (*i.e.* more than 8,000 tickets), then LAC will have the election to either (1) make additional tickets available in the October 2014 home games in order to fulfill the claims, or (2) roll the claims for free tickets above the 8,000 cap over into Los Angeles Clippers' home games in October 2015 (at an approximate cap of an additional 6,000 tickets).   The dates of the October 2015 home games have not yet been determined.

If more free tickets are claimed than are available in the October 2014 and 2015 home games combined (*i.e.,* more than 14,000 tickets), then LAC will have the option to either: (1) make more tickets available in the October 2014 and/or 2015 home games; or (2) have the excess claims default to an award of a savings voucher in the amount of forty dollars ($40) ("Savings Voucher Alternative"). The savings voucher in the amount of forty dollars ($40) pursuant to the Savings Voucher Alternative can be used toward the purchase of merchandise at the Team LA Store located in the Staples Center, or on www.clippersstore.com.

If the proposed settlement is not approved by the Court with sufficient time to distribute free tickets for the 2014 season then the benefits provided to the class members as stated herein (free tickets and savings vouchers) will be advanced by one year (i.e., free tickets and savings vouchers will be for home games in October 2015 and, if necessary, will roll over into home games in October 2016.

If less than a total of 1,000 claims are made class members, LAC will donate free tickets to a youth-oriented charity or charities, which may include, without limitation, Junior Achievement of Southern California, Salvation Army's Siemon Family Youth and Community Center, City of Los Angeles Department of Recreation and Parks, and Boy Scouts of America, in an amount equal to 1,000

less the total number of Valid Claims.  (For example, if 400 total Valid Claims are made by Settlement Class Members [regardless of which option is selected], LAC will donate 600 free tickets to charity.  If 900 total Valid Claims are made by Settlement Class Members, LAC will donate 100 free tickets to charity.)  The free tickets will be for games to be played on October 8, 17, 22 or 24, 2014, and will be located predominantly in Sections 301-334.  If the Settlement is not given final approval by the Court with sufficient time to distribute the donated tickets for the home games in October 2014, then the tickets will be donated according to these same terms for home games in October 2015.  The charity or charities selected to receive any balance of free tickets will be selected at LAC's sole discretion, and shall have no formal business relationship with LAC or Plaintiff, but may be a charity to which LAC has donated in the past.  The donation of unclaimed tickets is designed to benefit the Settlement Class as a whole.

Thus, the Settlement Class Members with valid claims (*i.e.,* claims in which all required information is provided and from which it can be ascertained from records that a text message may have been placed to the cell phone number identified) ("Valid Claims") will receive goods and/or savings vouchers with an average total value of $40.00 per person whose cellular telephone number is confirmed to be within the confirmed 132,098 unique telephone numbers confirmed by Defendant and its related entities.  Furthermore, the Settlement Class will also receive the benefit of a proposed stipulated injunction preventing such actions in the future for a period of 24 months.

The costs of notice and claims administration (estimated to be approximately $100,000) will be paid separately by LAC.  In addition, Plaintiff's attorneys' fees and costs not to exceed $600,000 will be paid separately by LAC. Thus, in addition to the tickets and savings vouchers provided to the Settlement Class Members, LAC will be responsible for approximately $700,000 in

administration costs, Plaintiff's attorneys' fees and litigation costs incurred.  In consideration for the Settlement, Plaintiff, on behalf of the proposed Settlement Class Members (the "Class"), will dismiss the Litigation and unconditionally release and discharge Defendant and other Released Parties from all claims relating to the Litigation.

While Plaintiff is confident of a favorable determination on the merits, he has determined that the proposed Settlement provides significant benefits to the Settlement Class Members and is in the best interests of the Class.  Plaintiff also believes that the Settlement is appropriate because Plaintiff recognizes the expense and amount of time required to continue to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims.   Similarly, as evidenced by the Agreement, LAC believes it has substantial and meritorious defenses to Plaintiff's claims, but has determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Accordingly, Plaintiff moves the Court for an order preliminarily approving the proposed Settlement, provisionally certifying the Class pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of class notice, and scheduling a final approval hearing.  The motion is unopposed; Defendant will be filing a Statement of Non-Opposition to this motion at or near the filing date.  A proposed Preliminary Approval Order is attached as Exhibit E to the *Agreement*.  Th e proposed Settlement satisfies all of the criteria for preliminary approval.

///

///

///

///

///

## II.      STATEMENT OF FACTS

### A.      Factual Background

In filing suit herein, Plaintiff alleged that in the relevant time period, February 6, 2009 to February 6, 2013, [3] LAC violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.,*  ("TCPA") by sending text messages to the cellular telephones of persons without "prior express consent," using an "automatic telephone dialing system."  Plaintiff contends he and the Class are entitled to statutory damages and injunctive relief pursuant to the TCPA.  LAC has denied and continues to deny that it violated the TCPA, and denies all alleged wrongdoing or liability against it in the Action.

### B.      Proceedings to Date

Plaintiff Ari Friedman filed the initial class action complaint ("Complaint") on February 6, 2013 asserting claims under the TCPA. ( Dkt. No. 1.)  In the Complaint, Plaintiff alleged causes of action for negligent and intentional violations [4] of the TCPA, and based on those allegations, sought $500 per negligent violation, $1,500 for each intentional violation and injunctive relief.  Plaintiff's claims were brought on behalf of a class of individuals who received text messages from LAC during the Class Period, made to their cellular telephone using automatic telephone dialing systems. (Dkt. No. 1).

On April 4, 2013, Defendant answered and denied all of the allegations and liability. ( Dkt. No. 8.). Furthermore, on June 28, 2013, Defendant filed a Motion for Judgment on the Pleadings ("MJOP") seeking to have the entire matter dismissed. (Dkt. No. 11)  Plaintiff filed his opposition to the MJOP on July 8, 2013 (Dkt. No. 12) and further filed a Notice of Supplemental Authority on July 9, 2013 (Dkt. No. 13).  On July 29, 2013, this Honorable Court denied

---

[3]   The TCPA's statute of limitations period runs for four years preceding the filing of the original Complaint.
[4]   Under the TCPA, a violation consists of a single call made that is prohibited under the statute.

Defendant's MJOP.   On August 1, 2013, this Honorable Court confirmed the denial and further issued its Scheduling Order.  (Dkt. No. 23).  On August 1, 2013, Plaintiff filed his Motion for Class Certification. (Dkt.  No.  22).

Since that time, the Parties engaged in discovery, including written discovery requests, document productions, and noticing of depositions.   After engaging in initial discovery (including the production of thousands of pages of documents by Defendant), the Parties attended mediation with the Hon. Leo S. Papas, (Ret.) on October 15, 2013.   The Parties were not able to reach a settlement during the course of the mediation.  However, over the course of the next two months, Judge Papas continued to work with the Parties, and this Settlement was ultimately reached in principle on December 13, 2013.   Atty Decls, ¶¶3-4.  On January 21, 2014, the Parties filed a Notice of Settlement advising the Court that the matter had settled on a proposed class-wide basis and requested that all pending dates be vacated.  (Dkt. No. 47).  On January 22, 2014, the Court vacated all pending dates and ordered Plaintiff to file his instant motion seeking preliminary approval of the class-wide settlement no later than March 24, 2014.  (Dkt. No. 48).

## III.   THE SETTLEMENT

### A.  The Settlement Class.

#### 1.  The Settlement Class.

The terms "Settlement Class" or "Settlement Class Members"  are defined in the Agreement as follows:

> All persons within the United States who received an unsolicited text message from LAC, which text message was not made for emergency purposes or with the recipient's prior express consent during the Class Period

*Agreement* §1(A).

### 2.  Class Membership Determination

The Settlement Class consists of all those persons who received a text message on their cellular phones from LAC during the Class Period without their prior express consent, as stated above.  Based on data provided in discovery by LAC, the total number of unique cell phone numbers that received a call (*i.e.* text message) from or on behalf of LAC during the Class Period (and therefore the number of individuals in the Settlement Class) is 132,098.  This number does not include cell phone numbers to which text messages were sent after an individual affirmatively opted-in to receiving text message alerts regarding the Clippers. Those numbers were confirmed by confirmatory discovery responses provided by LAC.  Atty Decls. ¶3.

### B.  Settlement Benefits to the Class.

Under the Settlement, LAC agrees to provide each Settlement Class Member who submits a Valid Claim, either of the following, at the Settlement Class Member's election:

> A). Two (2) free tickets to one (1) Los Angeles Clippers' home game at the Staples Center in Los Angeles, California for a game to be played on October 8, 17, 22 or 24, 2014 (located predominantly in Sections 301-334) ("Two Ticket Option").  The Two Ticket Option has a fair market value of between $30-$50 (face value of each ticket will be between $15 and $25 each); *or;*

> B). One (1) free ticket to one (1) Los Angeles Clippers' home game at the Staples Center in Los Angeles, California for a game to be played on October 8, 17, 22 or 24, 2014 (located predominantly in Sections 301-334) (the single ticket has a fair market value of between $15-25), *and* a savings voucher in the amount of twenty dollars ($20) that can be used toward the

purchase of merchandise at the Team LA Store located in the Staples Center, or at www.clippersstore.com ("Single Ticket Option").

*Agreement* §2(A)-(E).

The free tickets claimed pursuant to the Two Ticket Option and Single Ticket Option will be distributed on a first come first serve basis, and will be filled beginning with the highest valued tickets in the specified sections (approximately 8,000 tickets are available for the October 2014 home games). If more free tickets are claimed than are available in the October 2014 home games in the Sections specified in Paragraphs (2)(A)(i) and (2)(A)(ii) above (*i.e.* more than 8,000 tickets), then LAC will have the election to either (1) make additional tickets available in the October 2014 home games in order to fulfill the claims, or (2) roll the claims for free tickets above the 8,000 cap over into Los Angeles Clippers' home games in October 2015 (at an approximate cap of an additional 6,000 tickets). The dates of the October 2015 home games have not yet been determined. *Agreement* §2(B).

If more free tickets are claimed than are available in the October 2014 and 2015 home games combined (*i.e.,* more than 14,000 tickets), then LAC will have the option to either: (1) make more tickets available in the October 2014 and/or 2015 home games; or (2) have the excess claims default to an award of a savings voucher in the amount of forty dollars ($40) ("Savings Voucher Alternative"). The savings voucher in the amount of forty dollars ($40) pursuant to the Savings Voucher Alternative can be used toward the purchase of merchandise at the Team LA Store located in the Staples Center, or on www.clippersstore.com. *Agreement* §2(B).

If the proposed settlement is not approved by the Court with sufficient time to distribute free tickets for the 2014 season then the benefits provided to the class

members as stated herein (free tickets and savings vouchers) will be advanced by one year (i.e., free tickets and savings vouchers will be for home games in October 2015 and, if necessary, will roll over into home games in October 2016. *Agreement* §2(C).

Thus, the class members with valid claims will receive goods and/or savings vouchers with an average total value of $40.00 per person whose cellular telephone number is verified as being a number identified in LAC's records. Furthermore, the Settlement Class will also receive the benefit of a proposed stipulated injunction preventing such actions in the future for a period of 24 months. *Agreement* §4.

LAC also agrees to pay: 1) all costs of administrating the proposed settlement to conclusion; 2) the proposed $1,000 Incentive Payment to the Plaintiff; and 3) the costs of litigation and legal fees incurred by Plaintiff's counsel, not to exceed $600,000. *Agreement* §5-7.

### C. **Benefit to Class Members.**

All of the approximately 132,098 persons in the Class are entitled to make a claim to receive the benefits stated above. *Agreement*, §3.

There is a 30-day Claims Period commencing once notice is provided after the preliminary approval hearing. *Agreement*, §3(A). To submit a claim, a Settlement Class member need only either: (a) complete a Claim Form online at the website specifically set up for the administration of the Settlement ("Settlement Website"); or (b) complete a Claim Form that is downloaded from the Settlement Website or received via direct mailing, and mail it to the Claims Administrator (defined below). *Agreement*, §3(A). All the claimant needs to provide is: 1) a name; 2) address; 3) email address; and 4) the cell phone number at which he or she received the text message from (or on behalf of) LAC. *Id*.

### D. __Non-Monetary Benefit to Class Members.__

All Class members and other members of the public will also benefit by the 24-month Injunction to which LAC has agreed.  Beginning October 15, 2013, LAC shall be enjoined from sending a "non-confirmatory" text message to anyone who has not affirmatively opted-in to receiving such messages.  For the purposes of this injunction, a "confirmatory" text message shall mean a text message sent in response to a text message received by LAC (including messages sent to any short codes assigned to LAC) confirming receipt of the text message, or confirming that the recipient has won a prize or other benefit as part of an LAC promotion.  A "non-confirmatory" text message shall mean any text message that does not fall within the definition "confirmatory." *Agreement*, §4.

### E. __Class Notice.__

Even though the expense of such notice is considerable, the Agreement provides that notice of the proposed Settlement will be mailed by the proposed claims administrator Kurtzman Carson Consultants LLC ("Claims Administrator") to Class Members by direct mail post-card notice ("Direct Mail Notice") whose addresses can be obtained via the results of a "reverse look up" (using the cell phone number as a starting point and working backwards to obtain corresponding addresses), which  will be conducted by an independent third party vendor, Full House Marketing.   *Agreement*, §8; Notice of Settlement is Exhibit C to the Agreement.

The Direct Mail Notice summarizes the Settlement, instructs how to make a claim, opt out or object, and directs the recipient to a Settlement Website  to learn the details of the Settlement, with such information being provided in both English and Spanish.  That website will also contain a formal lengthy Notice in a "Frequently Asked Questions" format. *Agreement* §7; Notice attached as Exhibit

D to Agreement.  In addition, the Settlement Website will permit Class Members to obtain information and a copy of the Agreement.  *Agreement* §7.

Furthermore, the Claims Administrator will arrange for notice of the Settlement by publication in the earliest possible issues of *USA Today,* a national publication, on two (2) consecutive Mondays in t he "Legal Monday" editions ("Publication Notice").  *Agreement* §8; Exhibit B of Agreement.

### F.  <u>Scope of Release.</u>

The scope of the release by all Class Members (other than those who elect not to participate in the Settlement) tracks the scope of Plaintiff's allegations in the Complaint relating to the  prohibition against "the use of an 'automatic telephone dialing system' as used in the TCPA. [5]  The release also covers known and unknown claims.  *Agreement* §17.

---

[5]   "Released Claims" shall mean all are all claims, causes of action, demands, judgments, damages, liabilities, whether known or unknown, contingent or non-contingent, including but not limited to, any and all attorneys' fees, costs, expenses, disbursements and interest, which the Plaintiff Releasing Parties now own or hold or have at any time owned or held, against the Released Parties and which arise out of or are in any way connected with the allegations raised in the complaint.  Released Claims specifically include, but are not limited to, any claims based upon the TCPA, any other legal or equitable claims of any type or nature that arise out of or are in any way connected with the allegations presented in the Action, and those claims that are based upon or related to receipt of a call (including text messages) from the Released Parties, including all claims for damages, interest, penalties, attorney's fees, costs, or disbursements, or any other claim for damages not specifically described above, that are based upon the foregoing Released Claims.

Without limiting the foregoing, the Released Claims specifically extend to TCPA claims, or claims relating to calls received during the Class Period that the Plaintiff Releasing Parties do not know or suspect to exist in their favor as of the date of Preliminary Approval of this Settlement.  In connection with such waiver and relinquishment, Plaintiff, on behalf of himself individually and in his representative capacities, and all Settlement Class Members are deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In addition, Plaintiff, individually and on behalf of the Plaintiff Releasing Parties, specifically understands that he may later discover additional injuries or damages that fall within the definition of "Released Claims" set forth above and that are not known to him at this time.  This Agreement specifically applies to such later discovered injuries or damages, and Plaintiff, individually and on behalf of the Plaintiff Releasing Parties, specifically accepts the risk that he may later discover such injuries or damages.

---

### G. <u>Opportunity to Opt-Out and/or Object.</u>

Under the terms of the proposed Settlement, Class members will have the right to opt out of the Settlement or to object to its terms. *Agreement* §11-12. The Direct Mail Notice, Publication Notice, and the "Frequently Asked Questions" Notice on the Settlement Website will inform Class members of these rights. *Agreement* §7; Exhibits B, C and D.

### H. <u>Termination of Settlement.</u>

If more than two thousand five-hundred (2,500) of the Class members submit valid Requests for Exclusion, then LAC, in its sole discretion, shall have the right to terminate the Settlement. *Agreement* §15(iii). If the Settlement is not finally approved by the Court or is materially modified in the course of approval proceedings, it will be void. *Id.* §1(B).

### I. <u>Payment of Notice and Administrative Costs by Defendant.</u>

The Agreement provides that the estimated costs of Direct Mail Notice, Publication Notice, establishing the Settlement Website and all claims administration procedures are to be paid by LAC to the Claims Administrator. *Agreement* §7.

### J. <u>Class Representative's Application for Incentive Awards.</u>

The proposed Settlement contemplates that Class Counsel will request and incentive award in the aggregate amount of $1,000 to be distributed to Plaintiff as the class representative, subject to Court approval. *Agreement* §6. LAC has agreed not to oppose a request for such incentive awards in the agreed-upon aggregate amount. *Id.*

**K.** **Class Counsel's Application for Attorneys' Fees, Costs, and Expenses.**

The proposed Settlement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees and costs not to exceed $600,000 to be paid directly by LAC.  *Agreement* §5.  LAC has agreed not to oppose an application by Class Counsel for an award of attorneys' fees and costs not to exceed this amount.  *Id*.

## IV.  ARGUMENT

**A.** **Legal Standards for Preliminary Approval of a Class Action Settlement.**

A class action may not be dismissed, compromised or settled without the approval of the court.  Fed. R. Civ. Proc. 23(e).  Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, including preliminary approval, dissemination of notice to class members, and a fairness hearing.  *Manual*, §§ 21.632, 21.633, 21.634.

The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile.  *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*").  The Court is not required to undertake an in-depth consideration of the relevant factors for final approval.  Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982). As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.). Thus, in considering a potential settlement, the Court need not reach any ultimate

conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits.  *Officers for Justice v. Civil Service Comm'n,*  688 F.2d at  625.  Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection."  *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Preliminary approval of the settlement should be granted if there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004).  This proposed settlement satisfies those standards.

Furthermore, the opinion of experienced counsel supporting the settlement is entitled to considerable weight.  *See., e.g.*,  *Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]"  *See Hanlon*, 150 F.3d at 1026.  This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources.  *See Linney v. Cellular Alaska P'ship*, 151 F .3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

Based on these standards, Plaintiff respectfully submits (and Defendant does not oppose) that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.

**B.    The Proposed Settlement Is Fair, Reasonable and Adequate and Should Be Preliminarily Approved.**

**1.    Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case.**

Defendant LAC has vigorously contested the claims asserted by Plaintiff in this Action.  While both sides strongly believe in the merits of their respective cases, there are risks to both sides of continuing the Action.  Class Counsel understands there are uncertainties associated with complex class action litigation and that no one can predict the outcome of the case, but is confident that a class would be certified here, should the case proceed.  If the Action were to continue, challenges would likely be made by Defendant to any class certification motion made by Plaintiff, thereby placing in doubt whether a class could be certified in the Action.  Further, it is likely that Defendant will have additional substantive challenges to the claims raised by Plaintiff.  In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class including the significant benefit and the deterrent effects it would have.  Attorney Decls., ¶17.  As a result, Class Counsel supports the Settlement and seeks its Preliminary Approval.  *Id*.  Similarly, LAC believes that it has strong and meritorious defenses to the action as a whole, as well as to class certification and the amount of damages sought.  However, LAC recognizes that if a class were certified, the potential amount of damages could be significantly higher than the Settlement agreed to here.  The negotiated Settlement is a compromise avoiding that risk and the risk that the class might not recover, and the Parties hereby seek approval of the negotiated Settlement.  Therefore, the Settlement avoids that risk and

therefore the Parties jointly seek to have the Court approve this Settlement. Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the litigation as a class action for alleged violations of the TCPA.

### 2.   Defendant's Agreement to Provide Class Members with Free Tickets and/or Savings Vouchers is a Fair and Substantial Benefit to the Class.

As set forth above, LAC has agreed to provide each class member with a valid claim one (1) to two (2) free tickets to a home game (face value of each ticket ranging from $15 to $25) and/or a savings voucher ranging from $20 to $40, as well as pay notice and claims administration costs of approximately $100,000; $1,000 incentive award to Plaintiff, and attorneys' fees/costs not to exceed $600,000.00 to settle this lawsuit.  Class Members with valid claims will receive these benefits by simply mailing or submitting online a claim form to the Claims Administrator.

Furthermore, unlike a "common fund" class-wide settlement, the proposed benefits to the class members will NOT be reduced if too many claims are filed, as each and every valid claim submitted will receive a benefit of nearly the same monetary value, regardless of the amount of claims.  The only limitation on benefits to members of the Settlement Class is the availability of tickets to the LAC home games, which is a finite number.  However, even if all available tickets are distributed to class members, valid claims after such distribution of tickets will still receive the $40 savings voucher which can be used to purchase merchandise either at the Staples Center Team LA store or online.

The settlement award that each Class Member will receive is fair, appropriate, and reasonable given the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainty of continued litigation.  Although the

TCPA provides for statutory damages of up to $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial.  *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims");  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).

The Class will also benefit from the 24-month injunction to which LAC has agreed.  See *Agreement* §4.  That injunctive relief will ensure LAC's compliance with the TCPA by checking phone numbers to be called against a list of known cell phone identifiers.  I f the number is a cell phone, LAC will not text that number unless it has prior express consent to do so, or to confirm receipt of a text message from the recipient.  *Id.*  Thus, this Action has provided substantial benefit to the Class Members, both monetarily and through the cessation of potentially illegal conduct directed toward the Class.

### 3. The Settlement Was Reached As the Result of Arms-Length Negotiation, Without Collusion, With the Assistance of an Independent Mediator.

The proposed Settlement is the result of intensive arms-length negotiation, including an all-day mediation session before the Hon. Leo S. Papas (Ret.), former federal Magistrate Judge, and several months of intense negotiations (facilitated by Judge Papas) in the two months following the mediation. The Parties also negotiated through in-person meetings, by email and by telephone, both before and after the mediation session. The Parties conducted formal and informal discovery as well. With the guidance of Judge Papas, and working independently of the Court, the Parties were able to reach a resolution of this case. Agreement § E; Atty Decls., ¶3-4;    Informal and confirmatory discovery was provided to Class Counsel. Class Counsel is satisfied the information provided about the number of persons in the Settlement Class and the number of cell phones called is correct. Atty Decls., ¶3,9. Furthermore, after reaching an agreement in principle to settle the case, the Parties' counsel engaged in extensive discussions about the many details regarding the Settlement, its terms and how to implement its terms. That was required to work out the many details surrounding data production, the claims procedure, and how to provide notice.    The time and effort spent on settlement negotiations, as well the time spent with Judge Papas in the settlement process, militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate there was no collusion. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

### 4. Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class.

The Parties are represented by counsel experienced in complex class action litigation. Class Counsel has extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection and specifically the TCPA. Friedman Decl., ¶¶24-40; Bontrager Decl., ¶¶24-40. Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class Members. Atty Decls., ¶17.

### B. The Court Should Preliminarily Certify the Class for Purposes of Settlement.

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). Like any other class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23 are met. *Id.* As explained below, class certification is appropriate here because the Litigation meets the requirements of Rule 23(a) and Rule 23(b)(3).

### 1. The Proposed Class Is Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). Here, the data that will be used to

provide notice to the Class contains information relating to a pproximately 132,098 individual Settlement Class Members.   *Agreement* §7.   Thus, the proposed Class is sufficiently numerous for purposes of certifying a settlement class.

### 2.    The Commonality Requirement Is Satisfied, Because Common Questions of Law and Fact Exist.

The commonality requirement is met if there are questions of law and fact common to the class.   *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").   Here, for purposes of settlement, the proposed Class Members' claims all stem from the same factual circumstances, specifically that text messages were sent by or on behalf of LAC to Class Members between February 6, 2009 and February 6, 2013.   Plaintiff's claims also present a number of questions of law that are common to all members of the Class for settlement purposes, including: (1) whether LAC negligently violated the TCPA; (2) whether LAC willfully or knowingly violated the TCPA; and (3) whether LAC had "prior express consent" for sending the text messages; and (4) whether LAC (or any entity that sent a text message on LAC's behalf) used an "automatic telephone dialing system" to send the text messages.   The Class Members all seek the same remedy.   Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class.   *See Hanlon,* 150 F. 3d at 1019-20.

### 3.    The Typicality Requirement Is Met.

The typicality requirement is m et if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical."   *Hanlon*, 150 F.3d at 1020.   For purposes of Settlement, Plaintiff's claims are typical of the claims of the whole class because they arise

from the same factual premise – text messages were sent to Plaintiff and the Class using autodialing equipment without Plaintiff's and the other Class members' prior express consent– and are based on the same legal theory as applies to the Class as a whole – that the text messages violated the TCPA. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). Plaintiff claims that he was contacted by LAC on his cellular telephone via an automatic telephone dialing system and that he did not provide LAC with prior express consent for the text message. Complaint, (Dkt. No. 1). Accordingly, Plaintiff's claims are typical of those of the Class Members he seeks to represent. Thus, the typicality requirement is satisfied for certifying a settlement class.

### 4.     The Adequacy Requirement Is Satisfied.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Plaintiff and Class Counsel have no conflicts of interest with other Class Members because, for purposes of the Settlement, Plaintiff's claims are typical of those of other Class Members. *See* Declaration of Ari Friedman in Support of Preliminary Approval ("Plaintiff Decl.") ¶3, 6-7 ; Atty Decls. ¶38-40. In addition, Plaintiff Ari Friedman and Class Counsel have been prosecuting this action vigorously on behalf of the Class. Plaintiff and Class Members share the common goal of protecting and improving consumer and privacy rights throughout the nation, and there is no conflict among them. Atty Decls. ¶38-40

Class Counsel have extensive experience in consumer protection litigation, including the prosecution of class actions seeking to protect privacy and consumer rights, including TCPA actions.  Atty Decls. ¶24-40.  Class Counsel is qualified and able to conduct this Litigation.  Atty Decls. ¶24-40. Rule 23(a)(4) is therefore satisfied.

### 5.   Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only.

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation."  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'"  *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), *amended*, 273 F. 3d 1266 (9th Cir. 2001).

Here, the central inquiry is whether LAC violated the TCPA with text messages to Class Members.  Considerations of judicial economy favor litigating a predominant common issue once in a class action instead of thousands of times in separate lawsuits.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.

///

///

///

### 6.   Class Treatment for Settlement Purposes is Superior to Individual Resolutions.

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims.  Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement.  "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163.  *See also, Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate.  Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply.  In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997).  " With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious . . . ." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998);

*see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted).

Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

- Any class member who wishes to pursue a separate action can opt out of the Settlement.
- The Parties are unaware of any competing litigation regarding the claims at issue.
- The Parties agree that it would be desirable to resolve Plaintiff's claims in this forum.

### C.  The Proposed Method of Class Notice Is Appropriate.

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.[6]

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal". Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice. The notice must concisely and clearly state in plain, easily understood language: (i)

---

[6]   Defendant has agreed to bear the responsibility of preparing and serving  the requisite Class Action Fairness Act ("CAFA") Notices pursuant to 28 U.S.C. Section 1715(b).  *Agreement,* §7.

the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Direct Mail Notice, Publication Notice, and the Formal Q & A Form Notice to be posted on the Settlement Website meet all the requirements. *See Agreement,* Exhibits B-D.  The Claims Administrator will mail individual Direct Mail Notices to any of the 132,098 Class Members whose addresses are ascertained as a result of the "reverse look-up" by Full House Marketing, via first-class mail in postcard style form (Exhibit B to the Agreement).  This initial mailing of the Direct Mail Notice and publication notice shall occur within 21 days after the Preliminary Approval.  *Agreement* §8.

In addition, the Parties have agreed to provide notice through the formal and lengthy Q & A Form Notice posted on the Settlement Website which the Claims Administrator will establish and maintain.  *See Agreement*, Ex. D.  The Settlement Website will allow visitors to access (and print) a complete copy of the Publication Notice, the Settlement Agreement, the Q&A Notice Form, and all relevant Orders issued by the Court.  Any Class Member will be able to file a claim online or by mailing a claim form he or she has downloaded from the Settlement Website, all as set forth in the Notice.  *Agreement* §3(A).

Furthermore, the notices will be disseminated and also posted on the website sufficiently prior to the Final Approval hearing to give Class Members the opportunity to comment on the Settlement, or to opt out and preserve their

rights to bring a claim individually.  *See Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) citing *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of a notice which was mailed 26 days before the deadline for opting out of a settlement).  Here there will be 51 days to opt out or object from the date of preliminary approval – Notices to be delivered within 21 days of preliminary approval plus 30 days thereafter.  Accordingly, the Direct Mail Notice, Publication Notice, as well as the lengthy Q & A Form Notice posted on the Settlement Website fulfills all requirements of adequate notice and should be duly approved.   *Torrisi, supra*; Fed. R. Civ. P. 23(c)(2); *Manual, 3d*, 30.21.

Pursuant to the proposed Settlement, LAC will provide the relevant data containing the 132,098 unique cell numbers to the Claims Administrator and Full House Marketing.  The data will be used by Full House Marketing to do a "reverse look up" and obtain addresses for Direct Mail Notice in addition to allowing the Claims Administrator to verify class members who have Valid Claims (i.e., class members whose cell numbers are contained within the data).  The data was provided by LAC in discovery and again during the course of confirmatory discovery.

This notice program was designed to meaningfully reach the largest possible number of Class Members.  Courts have approved settlements in which notice was calculated to reach 75-83% of the class[7] and 70% of the class.[8]  Here,

---

[7] *Hartless v. Clorox Co.*, 2011 U.S. Dist. LEXIS 5427, at *25 (S.D. Cal. Jan. 20, 2011) (court granted final approval of settlement where notice was estimated to reach 75-83 percent of the class).
[8] *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, at *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80 percent of adults learned of the settlement).

the Direct Mail Notice is calculated to reach every member of the 132,098 Class members identified in the data (list of cell numbers) by Direct Mail Notice (ultimately, however, Direct Mail Notice will only be sent to addresses able to be obtained as a result of the reverse look-up procedure). Publication Notice in two consecutive weekly editions of *USA Today* is calculated to reach those class members whose addresses cannot be obtained through the reverse look up procedure. The mailing of the Direct Mail Notice combined with the Publication Notice and the posting of the lengthy notice in the Frequently Asked Questions form on the Settlement Website, satisfies the requirements of due process, is the best notice practicable under the circumstances, and constitutes due and sufficient notice.

**D.    The Court Should Appoint the Class Representative and Appoint Class Counsel.**

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The adequacy of representation requirement is met here. For settlement purposes, the Parties have agreed that the Plaintiff Ari Friedman should be appointed as the class representative ("Class Representative"). *Agreement* §1(E). The Parties have agreed that Todd M. Friedman, Esq. and Nicholas J. Bontrager, Esq. of Law Offices of Todd M. Friedman, P.C. should be appointed as counsel for the Settlement Class for all purposes of the Settlement ("Class Counsel"). *Agreement* §1(F). Class Counsel has extensive experience sufficient to be appointed as Class Counsel here. Atty Decls., ¶¶24-40. Plaintiff Friedman

understands the obligations of serving as Class Representative, has adequately represented the interests of the putative class, and has retained experienced counsel. Atty Decls ¶24-40;  Plaitniff Decl. ¶3,5-6.  As discussed above, Plaintiff has no antagonistic or conflicting interests with the Class Members. Atty Decls ¶38-41 ;  Plaintiff Decl., ¶3,6-7.  Plaintiff and the Class Members seek the same relief, *i.e.,* damages for Defendant's alleged unlawful actions.  Considering the identity of claims, there is no potential for conflicting interests in this action.

### E.   **The Court Should Appoint Kurtzman Carson Consultants LLC as the Claims Administrator.**

The Parties have agreed upon and propose that the Court appoint the Kurtzman Carson Consultants LLC ("KCC") to serve as the Claims Administrator.  *Agreement*, §7.  KCC specializes in providing administrative services in class action litigation, and has extensive experience in administering similar class action settlements.  Attys Decl.,  ¶18.

### F.   **A Final Approval Hearing Should Be Scheduled.**

The last step in the settlement approval process is the formal fairness or final approval hearing, at which time the Court may hear all evidence and argument, for and against, to evaluate the proposed Settlement.  The Parties request that the hearing be held not before twenty-eight (28) days after the deadline for all class members to opt-out, object to, or comment upon the Settlement.   A proposed order preliminarily approving the Class Action Settlement is attached to the *Agreement* as Exhibit E.  A proposed order granting final approval is attached to the *Agreement* as Exhibit F.

///

///

///

## V.    **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests (and Defendant does not oppose) that the Court enter an order preliminarily approving the proposed Settlement.

Respectfully submitted this 4th day of March 2014.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:    /s/ Todd M. Friedman

Todd M. Friedman
Attorney for Plaintiff

## PROOF OF SERVICE

I, Todd M. Friedman, state the following:

I am employed in Los Angeles, California; I am over the age of 18 and am not a party to this action; my business address is 369 S. Doheny Dr., Ste. 415, Beverly Hills, CA 90211.  On March 4, 2014, I served the following documents:

**NOTICE OF AND PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; EXHIBIT 1; DECLARATION OF TODD M. FRIEDMAN; DECLARATION OF NICHOLAS J. BONTRAGER; DECLARATION OF ARI FRIEDMAN**

On the parties listed below:

ROBERT H. PLATT
E-mail:  RPlatt@manatt.com
ADRIANNE E. MARSHACK
E-mail:  AMarshack@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

By the following means of service:

[X]   **BY ELECTRONIC CASE FILING:** I filed the submitted the document listed above via the court's Electronic Case Filing (ECF) system which provides electronic mail (email) service of the listed document directly to the party listed above to his/her "email address of record."

[X]   **STATE:** I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on March 4, 2014, at Beverly Hills, California.

By:  /s/ Todd M. Friedman
Todd M. Friedman