**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (SBN 216752)
Nicholas J. Bontrager (SBN 252114)
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@attorneysforconsumers.com
nbontrager@attorneysforconsumers.com
***Attorneys for Plaintiff***

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ARI FRIEDMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** ) | Case No. CV13-00818 CBM (ANx) |
| ) | **CLASS ACTION** |
| Plaintiff, ) | |
| ) | **NOTICE OF AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| vs. ) | |
| ) | **Date: June 30, 2014** |
| ) | **Time: 2:30pm** |
| **LAC BASKETBALL CLUB, INC.,** ) | **Ctrm: 2** |
| ) | |
| Defendant. ) | **Hon. Consuelo B. Marshall** |
| ) | |
| _____ ) | |

///

///

///

1

**<u>TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD</u>:**

**PLEASE TAKE NOTICE** that on June 30, 2014, at 2:30 p.m., before the United States District Court, Central District of California, Courtroom 2, 312 N. Spring Street, Los Angeles, CA 90012, Plaintiff ARI FRIEDMAN ("Plaintiff") will move this Court for an order granting final approval of the class action settlement detailed in Plaintiff's memorandum of points and authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Respectfully submitted this 2nd day of June 2014.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:  <u>/s/ Todd M. Friedman</u>

Todd M. Friedman
Attorney for Plaintiff

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3</u>

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the contents of the instant motion.    Defendant does not oppose Plaintiff's motion and requested relief and will file a statement confirming same.

Respectfully submitted this 2nd day of June 2014.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:    <u>/s/ Todd M. Friedman</u>

Todd M. Friedman
Attorney for Plaintiff

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………6

II.   FACTS AND PROCEDURAL HISTORY……………………………9

    A.    CLASS ALLEGATIONS……………………………………9

    B.    SETTLEMENT………………………………………………9

    C.    CAFA NOTICES…………………………………………10

    D.    REQUEST FOR ENTRY OF PRELIMINARY APPROVAL ORDER………10

    E.    ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENTS
APPLICATION………………………………………………10

    F.    FAIRNESS HEARING………………………………………10

III.  PROPOSED CLASS ACTION SETTLEMENT TERMS………..……………..11

    A.    CERTIFICATION OF A FED. R. CIV. P. 23(B)(3) SETTLEMENT
CLASS………………………………………………………11

    B.    SETTLEMENT BENEFITS…………………………………11

    C.    THE NOTICE PROVISIONS………………………………13

        1.    DIRECT MAIL NOTICE PROVIDED…………………………13

        2.    THE NOTICE WAS POSTED ON THE SETTLEMENT
WEBSITE…………………………………………..…………14

        3.    PUBLICATION NOTICE…………………………………14

    D.    CLAIMS PROCEDURE AND CLAIMS FILED…………………14

    E.    EXCLUSIONS………………………………………………15

    F.    OBJECTIONS………………………………………………15

    G.    CLASS REPRESENTATIVE PAYMENT………..…………………15

    H.    CLASS COUNSEL'S ATTORNEYS' FEES, COSTS, AND
EXPENSES…………………………………………………16

IV.   ARGUMENT………………………………………………………16

**A.** **THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE**……………………………………**16**

**B.** **THE STRENGTH OF THE LAWSUIT AND THE RISK, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF FURTHER LITIGATION**………………………………………………..**18**

**C.** **THE VALUE OF THE SETTLEMENT**……...…………………**19**

**D.** **THE EXTENT OF DISCOVERY COMPLETED**………………..**21**

**E.** **THE EXPERIENCE AND VIEWS OF CLASS COUNSEL**………………**21**

**F.** **THE REACTION OF THE CLASS MEMBERS TO THE PROPOSED SETTLEMENT**……………………………………………**22**

**V.** **CONCLUSION**……………………………………………..**23**

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiff ARI FRIEDMAN, ("Plaintiff" or "Class Representative"), submits this memorandum in support of his unopposed Motion for Final Approval of Class Action Settlement. Defendant LAC BASKETBALL CLUB, INC. ("LAC" or "Defendant") do not oppose this motion and is expected to file a statement to that effect.

## I.   INTRODUCTION

This Settlement is an excellent result and merits final approval. The Settlement set forth in the Class Action Settlement Agreement and Release (hereinafter referred to as the "Agreement" or "Agr.") provides, on a claims-made basis, that all class members who submit a valid claim, can receive *either* of following:

> A). Two (2) free tickets to one (1) Los Angeles Clippers' home game at the Staples Center in Los Angeles, California for a game to be played on October 8, 17, 22 or 24, 2014 (located predominantly in Sections 301-334) ("Two Ticket Option").  The Two Ticket Option has a fair market value of between $30-$50 (face value of each ticket will be between $15 and $25 each); *or;*

> B). One (1) free ticket to one (1) Los Angeles Clippers' home game at the Staples Center in Los Angeles, California for a game to be played on October 8, 17, 22 or 24, 2014 (located predominantly in Sections 301-334) (the single ticket has a fair market value of between $15-25), *and* a savings voucher in the amount of twenty dollars ($20) that can be used toward the purchase of merchandise at the Team LA Store located in the Staples Center, or at www.clippersstore.com ("Single Ticket Option").

The Class Members have been informed of and had the opportunity to call a toll free number or to go online to easily file a claim.  But without adequate notice, even that simple claims process would be meaningless, so this Settlement also provided that the Class Members for whom addresses could be obtained would receive a direct mail postcard summary notice. As of May 21, 2014, addresses were obtained for 37,809 Class Members based solely upon their respective cellular telephone numbers, and each of these Class Members was sent a postcard summary notice via direct mail. Racines Final App. Decl., ¶ 4-6; Contorno Final App. Decl., ¶ 7-10. Furthermore, in addition to direct mail notice, notice was published in a nationwide periodical, USA TODAY, on two (2) separate occasions.  The costs of litigating this action, including Plaintiff's attorneys' fees and the costs of notice and claims administration, are being paid by LAC, and the tickets and/or savings vouchers are separate from LAC's aforementioned payments.  This means that all Class Members who submit a valid claim will receive either tickets or savings vouchers, regardless of how many claims are submitted.  In other words, the value of the settlement benefits to Class Members will not be diluted by the costs of settlement administration, the attorneys' fees and costs to Plaintiff's counsel, or the number of claims that are made.

In addition, the Settlement also has the effect of putting an end to conduct alleged to be a violation of the TCPA.  As a result of the Settlement, Defendant agreed not to send "non-confirmatory" text messages to cellular telephones for a period of twenty-four (24) months, preventing calls to cell phones for which there is no prior express consent, thus resulting in a significant non-monetary benefit to Class Members and non-Class Members alike.  *Agr., § 4*. Therefore, this is an excellent result and should be given final approval by the Court.

On April 29, 2014, based upon the Agreement, the Preliminary Approval Motion, and the record, the Court entered an Order of Preliminary Approval of

Class Action Settlement (hereinafter referred to as the "Preliminary Approval Order"). (Dkt. No. 60). Pursuant to the Preliminary Approval Order, the Court, among other things: (i) preliminarily certified (for settlement purposes only) a class of plaintiffs (hereinafter referred to as the "Class Members") with respect to the claims asserted in the Action; (ii) preliminarily approved the proposed settlement; (iii) appointed Plaintiff Ari Friedman as the Class Representative; (iv) appointed Law Offices of Todd M. Friedman, P.C. as Class Counsel; and (v) set the date and time of the Final Approval Hearing for June 30, 2014, at 2:30 P.M. (Dkt. No. 60).

As required by the Preliminary Approval Order, the Parties engaged a third party class action administrator, Kurtzman Carson Consultants, LLC, (hereinafter referred to as "KCC" or "Claims Administrator"), to assist in administration of the class action settlement process. As detailed below, KCC disseminated the summary and full notices which advised Class Members that, in order to receive tickets or savings vouchers, they needed to call KCC's toll-free number, submit a claim online, or mail in a claim form no later than July 30, 2014. The summary and full notices also advised Class Members that the deadline to exclude themselves from the settlement or object was June 11, 2014. Racines Final App. Decl., ¶ 4-12. KCC was also engaged to receive and process all claims and requests for exclusion ("opt outs"). As of May 23, 2014, one (1) opt-out and zero (0) objections were received. Racines Final App. Decl., ¶ 15-16.

Although no objections have been filed with the Court as of June 2, 2014, the deadline for filing objections is June 11, 2014, which is nine (9) days after the filing of this brief in support of final approval. Class Counsel will advise the Court of any objections received after this date and will address them as needed. In total, as of May 28, 2014, **751 claims, zero objections and one (1) opt-out**, have been have been submitted by Class Members to KCC. Racines Final App. Decl., ¶ 15-17.

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff now seeks final certification and approval of the proposed class action settlement.  Specifically, Plaintiff requests the Court enter a Final Order and Judgment similar to the proposed Order submitted with this motion.

## II.   FACTS AND PROCEDURAL HISTORY

### A.   CLASS ALLEGATIONS

On February 6, 2013, Plaintiff filed this Action under the TCPA against Defendant (Dkt. #1).  Specifically, Plaintiff alleged that Defendant violated the TCPA by sending automated text messages to his cellular telephone without "prior express consent," using an "automatic telephone dialing system" and using an "artificial or prerecorded voice."  Plaintiff sought for himself and the putative class $500 per negligent violation and $1,500 per willful violation, as well as injunctive relief under 47 U.S.C. § 227(b)(3)(B) and § 227(b)(3)(C). On April 4, 2013, Defendant answered and denied all of the allegations and liability.   (Dkt. No. 8.).  Furthermore, on June 28, 2013, Defendant filed a Motion for Judgment on the Pleadings ("MJOP") seeking to have the entire matter dismissed.  (Dkt. No. 11).  Plaintiff filed his opposition to the MJOP on July 8, 2013 (Dkt. No. 12) and further filed a Notice of Supplemental Authority on July 9, 2013 (Dkt. No. 13).  On July 29, 2013, this Honorable Court denied Defendant's MJOP.  On August 1, 2013, this Honorable Court confirmed the denial and further issued its Scheduling Order.  (Dkt. No. 23).  On August 1, 2013, Plaintiff filed his Motion for Class Certification.  (Dkt.  No. 22).

### B.   SETTLEMENT

In an earnest attempt to settle the Lawsuit and avoid the risks inherent in proceeding to trial, the Parties discussed settlement on numerous occasions. Counsel for the Parties also exchanged various offers and counteroffers through in–person meetings, telephone conferences, a multitude of e-mails, and a full day mediation session with Hon. Hon. Leo S. Papas (Ret.).  Happily, the efforts of

Counsel to reach a compromise in the form of a proposed class settlement proved fruitful; on December 13, 2013, approximately ten months after the case was initially filed, the Parties were able to reach an understanding, the terms of which are memorialized in the Agreement.

### C.     CAFA NOTICES

LAC has an obligation under the Class Action Fairness Act of 2005 ("CAFA") to serve written notice of the proposed settlement on the U.S. Attorney General and the Attorney General of each state. Defendant served the proper CAFA notice as required by the Court on March 13, 2014.  Chernila Final App. Decl., ¶ 3.

### D.     REQUEST FOR ENTRY OF PRELIMINARY APPROVAL ORDER

On March 4, 2014, the Plaintiff filed an unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 49).  On April 29, 2014, the Court entered the Preliminary Approval Order, preliminarily certifying the proposed class and preliminarily approving the proposed class settlement (Dkt. No. 60).

### E.     ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENTS APPLICATION

At the Fairness Hearing, the Court will also consider Class Counsel's Motion for Attorney's Fees, Costs of Litigation and Incentive Payments to named Plaintiff ("Fee Brief").  Plaintiff's Fee Brief will be filed concurrently.  The Plaintiff requests that the Court enter an Order similar to the Final Approval Order submitted with this motion, which also includes a provision for such requested attorneys' fees, costs of litigation and incentive payments.

### F.     FAIRNESS HEARING

Per the Preliminary Approval Order, the Court set the Fairness Hearing for June 30, 2013, 2:30 p.m., at the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, CA 90012, Courtroom 2 (Dkt. No. 60).

III.    **PROPOSED CLASS ACTION SETTLEMENT TERMS**

The significant terms of the proposed settlement are the following:

A.    **CERTIFICATION OF A FED. R. CIV. P. 23(B)(3) SETTLEMENT CLASS**

The Preliminary Approval Order confirmed the following persons are in the Settlement Class:

> All persons within the United States who received an unsolicited text message from LAC, which text message was not made for emergency purposes or with the recipient's prior express consent between February 6, 2009 and the date on which this Order is signed.

Preliminary Approval Order, p. 1:14-17.

B.    **SETTLEMENT BENEFITS**

Under the Settlement, LAC agrees to provide each Settlement Class Member who submits a Valid Claim, either of the following, at the Settlement Class Member's election:

> A). Two (2) free tickets to one (1) Los Angeles Clippers' home game at the Staples Center in Los Angeles, California for a game to be played on October 8, 17, 22 or 24, 2014 (located predominantly in Sections 301-334) ("Two Ticket Option"). The Two Ticket Option has a fair market value of between $30-$50 (face value of each ticket will be between $15 and $25 each); *or;*

> B). One (1) free ticket to one (1) Los Angeles Clippers' home game at the Staples Center in Los Angeles, California for a game to be played on October 8, 17, 22 or 24, 2014 (located predominantly in Sections 301-334) (the single ticket has a fair market value of between $15-25), *and* a savings voucher in the amount of twenty dollars ($20) that can be used toward the purchase of merchandise at the Team LA Store located

in the Staples Center, or at www.clippersstore.com
("Single Ticket Option").

*Agreement* §2(A)-(E).

The free tickets claimed pursuant to the Two Ticket Option and Single Ticket Option will be distributed on a first come first serve basis, and will be filled beginning with the highest valued tickets in the specified sections (approximately 8,000 tickets are available for the October 2014 home games). If more free tickets are claimed than are available in the October 2014 home games in the Sections specified in Paragraphs (2)(A)(i) and (2)(A)(ii) above (*i.e.* more than 8,000 tickets), then LAC will have the election to either (1) make additional tickets available in the October 2014 home games in order to fulfill the claims, or (2) roll the claims for free tickets above the 8,000 cap over into Los Angeles Clippers' home games in October 2015 (at an approximate cap of an additional 6,000 tickets). The dates of the October 2015 home games have not yet been determined. *Agreement* §2(B).

If more free tickets are claimed than are available in the October 2014 and 2015 home games combined (*i.e.,* more than 14,000 tickets), then LAC will have the option to either: (1) make more tickets available in the October 2014 and/or 2015 home games; or (2) have the excess claims default to an award of a savings voucher in the amount of forty dollars ($40) ("Savings Voucher Alternative"). The savings voucher in the amount of forty dollars ($40) pursuant to the Savings Voucher Alternative can be used toward the purchase of merchandise at the Team LA Store located in the Staples Center, or on www.clippersstore.com. *Agreement* §2(B).

If the proposed settlement is not approved by the Court with sufficient time to distribute free tickets for the 2014 season then the benefits provided to the class members as stated herein (free tickets and savings vouchers) will be advanced by one year (i.e., free tickets and savings vouchers will be for home games in

October 2015 and, if necessary, will roll over into home games in October 2016. *Agreement* §2(C).

Thus, the class members with valid claims will receive goods and/or savings vouchers with an average total value of $40.00 per person whose cellular telephone number is verified as being a number identified in LAC's records. Furthermore, the Settlement Class will also receive the benefit of a proposed stipulated injunction preventing such actions in the future for a period of 24 months. *Agreement* §4.

LAC also agrees to pay: 1) all costs of administrating the proposed settlement to conclusion; 2) the proposed $1,000 Incentive Payment to the Plaintiff; and 3) the costs of litigation and legal fees incurred by Plaintiff's counsel, not to exceed $600,000.00. *Agreement* §5-7.

## C.   THE NOTICE PROVISIONS

### 1.   DIRECT MAIL NOTICE PROVIDED

KCC complied with the notice procedure set forth in the Preliminary Approval Order, p. 2, ¶ 8. As required by the Preliminary Approval Order, KCC mailed individual postcard notices by direct mail to the Settlement Class members that included a summary of the Settlement's terms, instructions for making a claim, and information regarding a website address http://www.lactcpasettlement.com/ (hereinafter referred to as the "Settlement Website") and KCC's toll-free telephone number to both receive calls regarding the Settlement and to file claims. Racines Final. App. Decl., ¶¶ 11.

Through a "reverse lookup" of cellular telephone numbers of Settlement Class Members, which was the only identifying information that the parties had, names and addresses associated with 37,809 of the cellular telephone numbers were identified, and summary notice of the proposed class settlement was mailed to these Class Members.  Contorno Final App. Decl., ¶ 8-10. Thus, based on

cellular telephone numbers alone, 37,809 – nearly one third – of the Class Members with located addresses received direct mail notice of the Settlement.

### 2. THE NOTICE WAS POSTED ON THE SETTLEMENT WEBSITE

In compliance with the Preliminary Approval Order, KCC also posted on the Settlement Website the detailed and full notice in a question and answer format explaining the case, the proposed settlement, and each Class Member's options, *see* Preliminary Approval Order, p. 2, ¶ 8; Racines Final App. Decl., ¶ 8. That website also contains the Settlement Agreement, the Preliminary Approval Order, the direct mail notice and the lengthy long form notice in a "Frequently Asked Questions" format. The website will also have these Final Approval briefs, Fee Brief and supporting documents posted after filing.

### 3. PUBLICATION NOTICE

For the remaining Class Members who were not sent a direct mail notice because their name and address information was not identified based on cellular telephone numbers alone via the "reverse lookup", these Class Members were provided notice by other means, such as the approved notice published in the national publication USA Today, published on May 5, 2014 and again on May 12, 2014. *See* Racines Final App. Decl., ¶¶ 10.

### D. CLAIMS PROCEDURE AND CLAIMS FILED

The Class Members are provided until July 30, 2014 to make a claim for tickets and/or savings vouchers (the direct mail notice was mailed May 1, 2014 and the claims deadline is July 30, 2014), and to submit an exclusion or file an objection by June 11, 2014. Preliminary Approval Order, p. 2-3, ¶ 9. The claims procedure was made as easy as possible – no paper claim form was necessary unless someone wanted to use regular U.S. Mail to submit a claim form downloaded from the Settlement Website. Friedman Final App. Decl., ¶ 15. All that was required to file a claim was a call to a toll–free number or complete an on-line submission to determine if the claimant's cell phone number was called

and if so, a claim was then filed. *Id*. The deadline to submit a claim is July 30, 2014. In total, 751 claims have been filed as of May 28, 2014. Racines Final App. Decl., ¶ 17.

The final amount of claims filed by the claims deadline and the number of opt outs will be provided to the Court. All of these claims were examined and validated by KCC. *Id*. Based upon the present number of claims in the amount of 751, each claimant will receive, at their election, tickets and/or savings vouchers, as discussed below. Friedman Final App. Decl., ¶ 17 and 20. KCC will be distributing the tickets and/or savings vouchers after final approval, and after the final numbers relating to the Settlement Class are known.

## E. EXCLUSIONS

KCC was also engaged to receive and process all claims and requests for exclusion ("opt outs"). The Preliminary Approval Order required the Class Members to send their requests for exclusion to KCC no later than June 11, 2014. As of May 28, 2014, only one (1) exclusion has been received. *See* Racines Final App. Decl., ¶ 15.

## F. OBJECTIONS

The deadline for filing an objection to the Settlement is June 11, 2014. Preliminary Approval Order, p. 3-4, ¶¶ 10. The Preliminary Approval Order requires any objection to be filed with the Court and also served on counsel by that date. As of May 28, 2014, Class Counsel reports no objections. If any objections are filed and served after the date of this filing, Class Counsel will advise the Court and respond accordingly. Friedman Final App. Decl., ¶ 19; *see also* Racines Final App. Decl., ¶ 16.

## G. CLASS REPRESENTATIVE PAYMENT

Pursuant to the Agreement, § 6, and subject to Court approval, Defendant agrees Plaintiff may be paid an incentive award. Class Counsel has requested only $1,000.00 for the Class Representative, in recognition of his service in

bringing this action. Class Counsel will submit briefing on that issue in Plaintiff's Fee Brief.

### H.   CLASS COUNSEL'S ATTORNEYS' FEES, COSTS, AND EXPENSES

Class Counsel is seeking a total sum of $600,000.00 for all attorneys' fees and costs incurred during the litigation. Plaintiff will be submitting a Fee Brief in support of such an award concurrently with the instant brief. The Parties and their counsel further represent and agree that allowance or disallowance by the Court of the agreed-upon amount of $600,000.00 for attorneys' fees and costs may be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceedings relating to the fees, costs, and/or expenses owed Class Counsel, or any appeal from any order relating thereto, or reversal, or modification thereof, shall not operate to terminate or cancel the Agreement, or affect or delay the finality of the proposed Final Approval Order approving the Agreement and the settlement of the Action. *Agr. § 5.*

## IV.   ARGUMENT

The Rule 23(a) and (b) factors were previously analyzed and applied by the Plaintiff in his Motion for Preliminary Approval.  *See* Docket No. 49.  As the Court ruled in its Preliminary Approval Order, this case satisfies the Rule 23 requirements.  *See id.*

### A.   THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisc*o, 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).  The Court has broad discretion to grant

such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. To determine whether the proposed settlement is fair, reasonable and adequate, the Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, *supra*, 150 F.3d at 1027 (9th Cir. 1998).

The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class

17

settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987).

Application of the relevant factors here confirms that the proposed settlement should be finally approved.

### B.    THE STRENGTH OF THE LAWSUIT AND THE RISK, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF FURTHER LITIGATION

Defendant has raised numerous defenses to the class claims.  Many of these defenses are set forth at length in Defendant's Answer and Motion for Judgment on the Pleadings, which were filed with the Court.  *See* Docket No. 8 and Docket No. 11; *see also Agr., § A.*  Defendant avers that its defenses have merit and would defeat the claims of the putative class.  However, settlement eliminates any further risk and expense for the Parties. Considering the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. *See* Preliminary Approval Order, p. 1, ¶ 2. As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes."  *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation…" *Id*.

While Class Counsel believe strongly in the merits of their claims brought on behalf of the class, they also recognize that any case encompasses risks and that settlements of contested cases are preferred in this circuit. Moreover, even if Plaintiffs were to prevail at trial, risks to the class remain. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D. N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of

litigation, such confidence is often misplaced"), aff'd, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

### C.   THE VALUE OF THE SETTLEMENT

The Agreement requires that Defendant provide each and every Class Member who submits a timely, valid claim with tickets and/or savings voucher(s), with an average value of $40.00 per Class Member (i.e., each ticket has an average value of $20.00 and each savings voucher will have a value of $20.00). If each and every one of the 132,098 Class Members submitted a timely, valid claim, this would equate to $5,283,920.00 in value to the Settlement Class. Friedman Final App. Decl. ¶ 20.  This value to each Class Member is on par with other TCPA settlements approved, and warrants final approval. *See Adams v. AllianceOne Receivables Management, Inc.*, 08-CV-0248 JAH (WVG) (S.D. Cal) (Class members received $40 per claim).

Here there were a total of 37,809 Class members who were mailed a direct notice postcard. Racines Final App. Decl., ¶ 11.  The fact that only 2% of those persons receiving such direct mail notice made valid claims as of May 28, 2014 should not deter the Court from approving the Settlement. Not only is there still approximately sixty (60) days left for Class Members to submit claims, but this is a consumer case and consequently subject to lower claims rates than other types of cases. Friedman Final App. Decl., ¶ 17.  Class Counsel used direct mail notice to ensure as many of the Class Members were notified as possible with only cellular telephone numbers available to identify the Class members. Friedman Final App. Decl., ¶ 15; Racines App. Decl., ¶ 11.

In addition, the notice was also published in a national publication, USA Today, on two (2) separate occassions. Racines Final App. Decl., ¶¶ 10. Furthermore, there could not be an easier claims process for any claimant to file a claim by allowing the Class Members to do so  claim online.  The Claim form

only required a confirmation of the class member's name and cellular telephone number. Friedman Final App. Decl., ¶ 15.  Thus, the fact that the number of claims actually submitted to date is small does not affect the underlying fairness of the settlement.

As the court held in *Beecher v. Able*, 441 F. Supp. 426, 429 (S.D. N.Y. 1977), where a much smaller number of claims was made in a class action than expected, "[i]n such circumstances, the settlement agreement should not lightly be set aside merely because subsequent developments have indicated that the bargain is more beneficial to one side than to the other."  In that case, the defendant urged the court to set aside the non-reversionary settlement agreement because the total settlement amounts would be paid not back to defendant but to a much smaller group of claimants than the parties expected.  The court refused to set aside the agreement, especially since the parties had built contingencies into the agreement in the event of high or low number of claims, as was done in the present case, and thus any mistakes were only a matter of degree, not to the heart of the matter.  *Id*. at 430.

In this case, regardless of the number of claims, either potential or submitted, the Defendants are required to provide each and every Class Member who submits a claim, tickets and/or savings vouchers in addition to being required to pay all attorneys'' fees and costs approved by the Court, a Class Repetitive incentive award approved by the Court and all claims administration costs.  In the context of the facts surrounding this Action, such an amount of represents a significant sum of money. This payment is likely to discourage any future behavior that could potentially violate the TCPA; in fact, it will encourage compliance with the law, as explained in Plaintiffs' Fee Brief.

Ultimately, the Settlement established by the Agreement here will serve both of the intended purposes of compensating the Class Members for their injuries and deterring future wrongful conduct. This settlement creates an incentive for

businesses to comply with the TCPA, which benefits the Class Members, consumers in general, as well as compliant competitive businesses. *See* David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance."). Thus, the Settlement should be approved by the Court as fair and reasonable.

## D.   THE EXTENT OF DISCOVERY COMPLETED

This case settled after extensive discovery and a mediation session conducted months apart to enable the Parties to ascertain the full extent of the Class.  Class Counsel conducted both formal and informal discovery as well as confirmatory discovery. The important information needed in these cases is how many cell phones were called during the Class Period and to whom were the calls made.  This information was obtained through informal, formal and confirmatory discovery and the numbers were confirmed by and through Class Counsel's discovery efforts.  *See* Friedman Final App. Decl., ¶¶ 2-9. Thus, the litigation had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications*, 618 F. Supp. at 745. Further, considering that the disputed issues between the Parties are legal, and not factual, in nature, the Parties have exchanged sufficient information to make an informed decision about settlement. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).

## E.   THE EXPERIENCE AND VIEWS OF CLASS COUNSEL

Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully

warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel.  *See M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Litigation*, Fourth § 30.42.

Here, it is the considered judgment of experienced counsel that this settlement is a fair, reasonable and adequate settlement of the litigation.  As set forth in the declarations attached to the Motion for Preliminary Approval and in support of their Fees Brief, Class Counsel are experienced consumer class action lawyers (*see* Dkt. No. 49).  This settlement was negotiated at arms'-length by experienced and capable Class Counsel who now recommends its approval.  Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class.  Class Counsel have achieved such a result here, and unequivocally assert that the proposed settlement should receive final approval. Friedman Final App. Decl., ¶¶ 20-22.

## F.   THE REACTION OF THE CLASS MEMBERS TO THE PROPOSED SETTLEMENT

The absence of any valid objection, at least to the date of filing this brief, by a Class Member is an important factor in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *Warner Communications*, 618 F. Supp. at 746.  In fact, the lack of objections may well evidence the fairness of the settlement.  *See In re PaineWebber Ltd. Litig.*, 171 F.R.D. 104, 126 (S.D. N.Y.), aff'd, 117 F.3d 721 (2d Cir. 1997).

Here, there has been no resistance to the proposed settlement, and 751 Class Members have filed valid claims. No Class Member has filed an objection

to date. It is also worth noting that only one (1) Class Member requested exclusion. Racines Final App. Decl., ¶ 15-17. Furthermore, the absence of objections and *de minimus* requests for exclusion from Class Members reinforces the notion that the proposed settlement is worthy of approval. Also, the Class Representative supports this motion. *See* Declaration of Ari Friedman in Support of Final Approval of Class Action Settlement.

## V.   CONCLUSION

The Parties have reached this Settlement following extensive arms' length negotiations. When adding up the average $40.00 value available to each Class Member who submits a valid claim, this Settlement is worth over $5,000,000.00. Thus, the Settlement is fair and reasonable. For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Grant approval of the proposed settlement;
2. Grant the motion for fees and costs scheduled to be heard the same date as this motion;
3. Enter the proposed Final Approval Order submitted; and
4. Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Respectfully submitted this 2nd day of June, 2014.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.


By:    /s/ Todd M. Friedman

Todd M. Friedman
Attorney for Plaintiff

**PROOF OF SERVICE**

I, Todd M. Friedman, state the following:

I am employed in Los Angeles, California; I am over the age of 18 and am not a party to this action; my business address is 324 S. Beverly Dr., Ste. 725, Beverly Hills, CA 90212.  On June 2, 2014, I served the following documents:

**NOTICE OF AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATION OF TODD M. FRIEDMAN; DECLARATION OF LACEY RACINES; DECLARATION OF RON CONTORNO; DECLARATION OF JEANNE M. CHERNILA; DECLARATION OF ARI FRIEDMAN**

On the parties listed below:

ADRIANNE E. MARSHACK
E-mail:  AMarshack@katzyoon.com
4 Park Plaza, Ste. 1040
Irvine, CA  92614

By the following means of service:

[X]   **BY ELECTRONIC CASE FILING:** I filed the submitted the document listed above via the court's Electronic Case Filing (ECF) system which provides electronic mail (email) service of the listed document directly to the party listed above to his/her "email address of record."

[X]   **STATE:** I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on June 2, 2014, at Beverly Hills, California.

By:  /s/ Todd M. Friedman
         Todd M. Friedman