**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (SBN 216752)
Nicholas J. Bontrager (SBN 252114)
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@attorneysforconsumers.com
nbontrager@attorneysforconsumers.com
***Attorneys for Plaintiff***

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ARI FRIEDMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** ) | Case No. CV13-00818 CBM (ANx) |
| ) | **CLASS ACTION** |
| Plaintiff, ) | |
| ) | **NOTICE OF AND PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE INCENTIVE PAYMENT** |
| vs. ) | |
| ) | **Date:  June 30, 2014** |
| **LAC BASKETBALL CLUB, INC.,** ) | **Time: 2:30pm** |
| ) | **Ctrm: 2** |
| Defendant. ) | |
| ) | **Hon. Consuelo B. Marshall** |
| _____ ) | |

*///*

*///*

*///*

**1**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 30, 2014, at 2:30 p.m., before the United States District Court, Central District of California, Courtroom 2, 312 N. Spring Street, Los Angeles, CA 90012, Plaintiff ARI FRIEDMAN ("Plaintiff") will move this Court for an order granting Plaintiff's Motion for Attorneys' Fees and Costs and Class Representative Incentive Payment.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Respectfully submitted this 2nd day of June 2014.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:    /s/ Todd M. Friedman

Todd M. Friedman
Attorney for Plaintiff

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3</u>

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the contents of the instant motion.    Defendant does not oppose Plaintiff's motion and requested relief and will file a statement confirming same.

Respectfully submitted this 2nd day of June 2014.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:    <u>/s/ Todd M. Friedman</u>
Todd M. Friedman
Attorney for Plaintiff

## **TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………….……6

II.     CLASS ACTIONS ARE IMPORTANT IN OUR JUSTICE SYSTEM…..6

III.    NON-COMPLIANCE WITH THE TCPA PLACES COMPLIANT BUSINESSES AT A COMPETITIVE DISADVANTAGE………………8

IV.     THE SETTLEMENT…………………………………...……………9

V.      THE ATTORNEYS' FEES ARE JUSTIFIED AND SUPPORTED BY AUTHORITY……………………………..………………………10

        A.      Attorneys' Fees Awarded Based Upon a Percentage of the Settlement is the Preferred Method in the Ninth Circuit………….10

        B.      The Percentage-of-Recovery Method Is Appropriate Here as The Settlement Creates a Common Fund of Tickets and/or Savings Vouchers……………………………………………………12

        C.      An Award of Attorneys' Fees of 11.3% of The Settlement Fund Which Is Below The Ninth Circuit's Benchmark, Is Justified In This Nationwide TCPA Class Action…………………………………14

                1.  Risks and Contingent Nature of This TCPA Action…………...17

                2.  The Novelty and Difficulty of The Issues Presented…………..18

                3.  The Customary Fee…………………………………………19

                4.  The Experience, Reputation and Ability of Counsel…………..19

                5.  The Amount In Controversy and Results Obtained……………19

                6.  Awards in Similar TCPA Class Actions………………………21

                7.  Few Objections, If Any, Are Anticipated………………………21

        D.      The Court Should Decline To Apply The Lodestar Method………22

                1.  Class Counsel's Hourly Rates Are Reasonable……………….24

                2.  A Multiplier of 3.228 Is Appropriate In This Case…………….28

VI.     PAYMENT OF LITIGATION COSTS IS FAIR AND REASONABLE..28

VIII.  PLAINTIFF IS ENTITLED TO A $1,000 INCENTIVE AWARD……..29

IX.     CONCLUSION………………………………………………………31

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff ARI FRIEDMAN, ("Plaintiff" or "Class Representative"), submits this memorandum in support of his unopposed Motion for Attorneys' Fees and Costs and Class Representative Incentive Payment. Defendant LAC BASKETBALL CLUB, INC. ("LAC" or "Defendant") does not oppose this motion and is expected to file a statement to that effect.

## I.   INTRODUCTION

Class Counsel for Plaintiff ARI FRIEDMAN ("Plaintiff" or "Class Representative") seeks Court approval of payment of attorneys' fees and costs in the aggregate amount of $600,000.00.  This is 11.3% of the $5,283,920.00 value of the Settlement Class Benefits (avg. $40.00 value of tickets and/or savings vouchers available for all 132,809 Class Members).  Further, as the parties agreed that payment to Class Counsel for fees and costs and payment to Plaintiff for incentive award as to be separate and distinct from the Settlement benefits, such payment does not affect the benefits provided for the Class.  Class Counsel also seeks a total incentive payment of $1,000.00 to be paid to ARI FRIEDMAN for his efforts in bringing and litigating this action.  These terms are part of the Settlement Agreement ("Agreement") previously filed as an exhibit to Plaintiff's Motion for Preliminary Approval.[1]  (Dkt. No. 49).

## II.   CLASS ACTIONS ARE IMPORTANT IN OUR JUSTICE SYSTEM

"Class actions serve an important function in our system of civil justice," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981), as they reduce litigation costs and promote greater efficiency, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996), as well as "provide aggrieved persons a remedy when individual litigation is economically

---

[1] Defined terms have their ascribed meaning in the Agreement unless otherwise specified herein.

unrealistic," such as in this case where the maximum recovery per negligent violation is only $500 (47 U.S.C. § 227(c)(5)).[2]

"Probably to a unique degree, American law relies upon private litigants to enforce substantive provisions of law that in other legal systems are left largely to the discretion of public enforcement agencies." John C. Coffee, Jr., Understanding the Plaintiff's Attorney: The Implication of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions, 86 Colum. L. Rev. 669, 669 (1986). "In class actions, lawyers have been called 'private attorneys general,' a term that links the class lawyer to the state's or the 'people's' lawyer."[3]

> *The prospect of these often large fees creates an incentive for plaintiff attorneys to file lawsuits on behalf of proposed class members.* In fact, these incentives have created a cottage industry for lawyers and plaintiffs who compete to fulfill this 'private attorney general' function. These lawsuits can both compensate deserving plaintiffs and deter illegal conduct. Conventionally, compensation is considered a private goal, and deterrence a public goal, but in reality, actions by both private and public attorneys can lead to both compensation and deterrence.

Carl W. Hittinger & Jarod M. Bona, *The Diminishing Role of the Private Attorney General in Antitrust and Securities Class Action Cases Aided by the Supreme Court*, 4 J. Bus. & Tech. L. 167, 169 (2009) (emphasis added). "Unless class counsel are adequately compensated, class and derivative litigation will be

---

[2] Thomas D. Rowe, Jr., *State and Foreign Class-Actions Rules and Statutes: Differences from - and Lessons for? - Federal Rule 23* (2007) 35 W. St. U. L. Rev. 147, 155 (quoting 5 James Wm. Moore et al., Moore's Fed. Prac. § 23.03 at 23-35)).

[3] Judith Resnik, Dennis E. Curtis & Deborah R. Hensler, *Individuals Within The Aggregate: Relationships, Representation, And Fees*, 71 N.Y.U. L.Rev. 296, 320 (1996).

undersupplied in the legal market."[4] Without adequate compensation to class action attorneys in TCPA cases such as this one, millions of consumers would likely go uncompensated for violations of their statutory rights, especially since "consumers find that using the TCPA's private right of action is very complex and time-consuming." *Mainstream Mktg. Servs. v. FTC*, 284 F. Supp. 2d 1266, 1273 (D. Colo. 2003) (citing 68 Fed. Reg. at 4629 (2003)).

## III.   NON-COMPLIANCE WITH THE TCPA PLACES COMPLIANT BUSINESSES AT A COMPETITIVE DISADVANTAGE

"[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance." David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995). When others, including entities that compete with Defendant, "see or hear about the noncompliance, [this] may reduce their perceived risk of detection and also may create a 'culture of noncompliance.'" Lloyd Hitoshi Mayer, *Grasping Smoke: Enforcing the Ban on Political Activity by Charities*, 6 First Amend. L. Rev. 1, 20 (2007). Not holding Defendant accountable for its numerous and wide-spread TCPA violations would harm other business entities by placing them at a disadvantage economically, because those compliant entities do not receive the benefit of inexpensive automated marketing text messages to consumer's cell phones without their prior express consent, as Defendant is alleged to have done here.

Allowing TCPA non-compliance to continue also harms consumers by invading their statutory right to privacy to be free from autodialed text messages

---

[4] Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, Cornell Law Faculty Working Paper, Paper 64, p. 2 (2009).

without their prior express consent, and may encourage other businesses to engage in similar illegal conduct due to lack of fear of enforcement, especially since government agencies such as the FCC may not have the resources to prosecute violations as often as they would like. Thus, class actions provide an important benefit to society. Indeed, commentators in support of class actions have declared:

> "[m]odern society seems increasingly to expose [people] to...group injuries for which individually they are in a poor position to seek legal redress…If each is left to assert his rights alone if and when he can, there will at best be a random and fragmentary enforcement, if there is any at all.").

*Vasquez v. Superior Court*, 4 Cal. 3d 800, 807 (Cal. 1971); *see also Graham v. Overland Solutions, Inc.*, 2012 U.S. Dist. LEXIS 130113, *12 (S.D. Cal. Sept. 12, 2012) (Roger T. Benitez) ("because of the relatively small individual claims of class members, it is unlikely that individual actions…will be filed."); *Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 4155361, at *8 (S.D. Cal.) (a TCPA class action).

Therefore, this TCPA class action benefits not only the Class, but also benefits society, the courts and compliant competitive businesses.

## IV.   THE SETTLEMENT

The details of the Settlement are set forth in the papers supporting the request for both Preliminary and Final Approval and for sake of brevity will not be repeated here. In summary, the mediated Settlement will provide all Class Members who submit claims with the option of tickets to a Los Angeles Clippers home game and/or savings vouchers, which each Class Member receiving an average value of $40.00, and for payment of the $1,000.00 to the Representative Plaintiff, and for attorneys' fees and costs of suit incurred by Plaintiff's counsel,

not to exceed $600,000.00. *See* Agr., § 2, 5, and 6. As a result, the Settlement provides for substantial benefits to the Class Members.

## V.      THE ATTORNEYS' FEES ARE JUSTIFIED AND SUPPORTED BY AUTHORITY

Class Counsel, through this Settlement, provided a substantial benefit to members of the Class who would unlikely be able to bring and maintain an action individually because damages are only $500 per negligent violation.[5] Moreover, Class Counsel took this case on a contingency basis, bearing the risk of non-payment for legal services and litigation costs. *See Crawford v. Astrue*, 586 F.3d 1142, 1152 (9th Cir. 2009) ("The attorneys assumed significant risk…that no benefits would be awarded or that there would be a long court or administrative delay in resolving the cases.").  As explained below, Class Counsel are requesting an attorneys' fee award of 11.3% of the $5,283,920.00 value of tickets and savings vouchers allotted to the Class members. This percentage represents *less than half* of the Ninth Circuit's 25% benchmark (*see Glass v. UBS Financial Services, Inc.*, 331 Fed. Appx. 452, 457 (9th Cir. 2009) (court's calculation of 25% of total award was in line with 9th Circuit precedent).

### A.      Attorneys' Fees Awarded Based Upon a Percentage of the Settlement is the Preferred Method in the Ninth Circuit

Where counsel for a class seeks fees based on a percentage of the total settlement value, courts most commonly use one of two methods to determine whether the request is reasonable: "percentage-of-the-fund" or "lodestar/multiplier." *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048, 49 (9th Cir. 2002); *Hanlon v.*

---

[5] *See Kaufman v. ACS Systems, Inc.*, 110 Cal. App. 4th 886, 924 (Cal. App. 2d Dist. 2003) ("a class action would enable attorneys (*who are not allowed to represent parties in small claims court*) to obtain relief for numerous individuals who have suffered an injury of insufficient size to warrant separate lawsuits") (emphasis added).

*Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). However, it is clear that courts prefer a "percentage-of-the-fund" model over a "lodestar-multiplier" approach in cases where it is possible to ascertain the value of the settlement. *See In Re Activision Securities Litigation,* 723 F. Supp. 1373, 1378-1379 (N.D. Cal. 1989) (holding that the percentage method is preferred over the lodestar method and finding it encourages efficiencies and early resolution); *see also* In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); In re Omnivision Techs, Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("[U]se of the percentage method in common fund cases appears to be dominant.").

In an empirical study based on 18 years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found that: (1) 83 percent of cases employed the percentage-of-the-recovery method, and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent during 1993-2002 to 9.6 percent from 2003 to 2008. *Theodore Eisenberg & Geoffrey P. Miller, Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008,* 7 Journal of Empirical Legal Studies 248, at 267-269 (2010). *Accord,* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards,* 7 Journal of Empirical Legal Studies, 2010 at 25 (finding, in a similar empirical study of 688 settlements approved by federal district courts during 2006 and 2007, nearly 69 percent of courts employed the percentage-of-the-settlement method, nearly 12 percent employed the lodestar method, and 20 percent did not report which method they used).

**B.** **The Percentage-of-Recovery Method Is Appropriate Here As The Settlement Creates A Common Fund of Tickets And/Or Savings Vouchers**

The Settlement in this class action is not a "coupon" settlement and is distinguishable from "coupon settlements" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712.  Courts have held that a "coupon" is a "discount on another product or service offered by the defendant in the lawsuit."  *See In re HP Inkjet Printer Litigation*, 2011 WL 1158635 *5 (N.D.CA. 2011).  Here, the Settlement provides each and every Class Member with options to receive value from Settlement, in a manner that is best suited and desired for each and every Class Member.  There is no "discount" for Defendant's services or products.  In fact, the Settlement allows for, at the Class Member's election, either (or a combination thereof) tickets to a Los Angeles Clippers home game (with an average face value of $20.00 per ticket) or a savings voucher (or two) with a cash equivalent value of $20.00 per voucher.  The Class Member will not be required to spend a single penny in order to receive the benefits they are receiving in the Settlement.

Notably, when the benefits afforded to the class members do not require the class to spend money or make a purchase in order to realize the benefits, does not force a class member to purchase a produce for which created the litigation, or conversely would allow a class member to obtain an entire product, such settlements are not deemed "coupon settlements."  *See Browning v. Yahoo!, Inc.*, 2007 WL 4105971 *5 (N.D.CA. 2007); *Synthfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646,654 (7th Cir. 2006); *In re Bisphenol-A Polycarbonate Plastic Prod. Liab. Lit.*, 2011 WL 1790603 *3 (W.D.MO. 2011).  Here, no Class Member must spend any sum of money to receive either tickets to a Clippers game or to receive a savings voucher.  The Settlement does not require a Class Member to purchase any alleged defective product which resulted

in the instant litigation.  Also, the Settlement allows Class members to receive an entire product, i.e., tickets to a Clippers game or utilizing savings vouchers to purchase any product(s) he/she desires within the $20.00 to $40.00 value of the voucher, depending on the Class Member's election.  Also, since tickets to sporting games or savings vouchers such as the ones in the Settlement are freely used or transferrable in the open market, theoretically, a Class Member could redeem the Settlement benefits for cash by selling the tickets or savings vouchers to other individuals for the cash equivalent.  Thus, it is clear that this Settlement is not a "coupon settlement."

This approach to a determination of attorneys' fees has been adopted in other similar TCPA class action settlements as well.  In the matter of *Kazemi v. Payless Shoesource, Inc.*, 2010 WL 963225 (N.D.CA. 2012), which was also a TCPA class action based upon allegedly violative text messages, the court recognized the existence of a common fund where the relief afforded to the class consisted of $25.00 merchandise certificates which totaled $6 million that could be used towards the purchase of footwear offered by the defendant.  In *Kazemi*, the final approval awarded class counsel fees on a cash basis in viewing the certificates offered to the class created a common fund.  Further, in the matter of *In Re Jiffy Lube International, Inc. Text Spam Litigation*, 3:11-md-02261-JM-JMA, Dkt. 97 (S.D.CA. Feb. 20, 2013), also a TCPA text message class action, the court viewed the settlement benefits of certificates to the class with approximate $20.00 value for automobile services from the defendant as creating a common fund benefit to the class and awarding fees to class counsel of $4.75 million.  *See* also Dec. of Todd Friedman.   Thus, based upon the settlement benefits to the instant Class Members, the case law interpreting such settlement, and similar settlement benefits within the TCPA class action setting, this Court should hold that the instant Settlement is not a "coupon" settlement and deem the benefits afforded to the Class members creates a common fund of value.

**C.     An Award of Attorneys' Fees of 11.3% of The Settlement Fund Which Is Below The Ninth Circuit's Benchmark, Is Justified In This Nationwide TCPA Class Action**

Importantly, parties to a class action may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees. *See Evans v. Jeff D.,* 475 U.S. 717, 734–35, 106 S.Ct. 1531, 89 L.Ed.2d 747, (1980). This significant Settlement is a result of much good-faith negotiation, a full day of mediation between the parties, the continued guidance of Hon. Judge Papas for the two months following said mediation, and many settlement agreement drafts and rewrites, which all supports the requested fee award. *See Jones v. Amalgamated Warbasse Houses, Inc.,* 721 F.2d 881, 884 (2d Cir. 1983) ("The presence of an arms' length negotiated agreement among the parties weighs strongly in favor of approval" of attorneys' fees agreed upon by the parties). In fact, California courts have awarded significantly more than the 11.3% negotiated fee in a class action settlement agreement. *See McPhail v. First Command Financial Planning, Inc.*, 2009 WL 839841 (S.D. Cal., Mar. 30, 2009); *see also Palmer v. Nigaglioni*, 2013 WL 542852 (9th Cir., Feb. 14, 2013) ("district court did not abuse its discretion in approving an attorney's fees award in the sum of 28%").[6]

As stated by the Ninth Circuit:

> Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, *courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award*, providing

---

[6] Research has shown that "[f]ee requests were generally granted in the amount requested with 72.5% of requests granted in full." Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, *supra*, at p. 18 (internal quotations omitted).

adequate explanation in the record of any "special circumstances" justifying a departure.

*In Re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) (cited cases omitted) (emphasis added).

In fact, where courts have reduced an agreed-upon amount of attorneys' fees, it was to reduce fees sought in the amount of 33.3% to the Ninth Circuit's benchmark of 25% (*see Chiaramonte v. Pitney Bowes, Inc.*, 2008 WL 510765 (S.D. Cal., Feb. 25, 2008). Here, experienced Class Counsel seeks *less than half* of the 25% benchmark set by the Ninth Circuit as compensation for outstanding legal services (i.e., 11.3% of the Settlement Fund), to bring the action to a speedy and successful resolution.

Significantly, California courts have awarded 25% *or more* of the settlement fund as attorneys' fees on numerous occasions. *See Graham et al. v. Overland Solutions, Inc.*, Case No. 10-CV-00672-BEN-BLM (S.D. Cal. Jan. 30, 2013) (30% in attorney's fees); *Boyce v. Sports and Fitness*, Case No. 03-CV-2140-BEN (BLM) (S.D. Cal. Jan. 24, 2006 (29% in attorneys' fees); *Adams v. AllianceOne*, Case No. 08-CV-0248-JAH (S.D. Cal. Sept. 28, 2012) (awarding $2.7 million in attorneys' fees in a TCPA class action, representing 30% of the settlement fund); *In re SeraCare Life Sciences, Inc. Securities Litigation*, No. 05-CV-02335-JLS-CAB (S.D. Cal. Sept. 24, 2008) (awarding $4,600,000 in attorneys' fees, representing 25% of the settlement fund); *Takas et al. v. A.G. Edwards & Sons, Inc.*, No. 04-CV-1852-JAH (NLS) (S.D. Cal. Nov. 5, 2007) (award of attorneys' fees in a TCPA class action in the amount of $6 million, representing 28.17% of the settlement fund); *Gutierrez v. Barclays Group*, No. 10-CV-01012-DMS-BGS (S.D. Cal. March 12, 2012) (awarding attorneys' fees in a TCPA class action in the amount of $1,580,000, representing the 25% benchmark); *see also Langille v. EMC*

15

*Corporation, Inc.*, No. 07-CV-0651 (S.D. Cal. July 9, 2008 (awarding 25% percent of settlement fund).[7]

In *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993), the Ninth Circuit affirmed the lower court's award of the 25% of the 30 million settlement fund, explaining that there were no special circumstances to indicate deviation from the 25% benchmark was appropriate, and recognizing that class counsel carried the financial burden when taking the case on a contingency fee basis, effectively prosecuted the action, and by reason of their expert handling of the case, achieved a just settlement for the class, as is the care here.[8]

Importantly, this is not a megafund case where courts frequently award less than 25% of the megafund in attorneys' fees. *See Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Often, but not always, fees of less than 25% will be awarded in megafund cases (cases of $50 Million or more")) (citing *Vizcaino v. Microsoft Corp.*, 290 F3d 1043, 1052 (9th Cir. 2002).

Additionally, "[c]ourts may observe the following factors when determining whether the benchmark percentage should be adjusted: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8)

---

[7] In *Sarabri v. Weltman, Weinberg & Reis Co.*, No. 10-CV-01777-AJB-NLS (S.D. Cal. Feb. 15, 2013), court awarded $225,000 in attorneys' fees in a TCPA class action payable apart from the settlement fund.

[8] *See In re Ventro Corporation Securities Litigation*, 226 F. Approx. 771 (9th Cir. 2007) (Ninth Circuit affirmed lower court's award of over nearly $7 million in attorneys' fees, representing the 25% benchmark, because there were no unusual circumstances requiring an upward or downward adjustment); *In re Pacific Enterprise Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1995) (Ninth Circuit affirmed district court's award of $4 million in attorneys' fees out of $12 million settlement fund, representing 33 1/3%).

comparison with counsel's loadstar." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *60 (C.D. Cal. June 10, 2005). Based upon these and other factors, explained below under the lodestar multiplier analysis, Class Counsel's requested award of attorneys' fees, significantly reduced from the Ninth Circuit benchmark and the negotiated percentage, is appropriate and should be approved by this Court.

### 1.   Risks and Contingent Nature of This TCPA Action

The public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk they might be paid nothing at all for their work. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Research shows that "courts systematically reward risk" in terms of litigation.[9]

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Catala v. Resurgent Capital Servs. L.P.*, 2010 U.S. Dist. LEXIS 63501, 7 (S.D. Cal. June 22, 2010) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004) (internal quotations omitted)). Because Class Counsel agreed to prosecute this case on a contingency with no guarantee of ever being paid, they faced substantial risk[10] throughout this proceeding. Plaintiff's counsel shouldered the risk of non-payment by taking the class action suit on a contingency fee basis. Indeed, "[c]ourts have split on class certification in TCPA cases, increasing the risk of maintaining the class action through trial." *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413, *4 (W.D.

---

[9] Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, *supra*, at p. 18 (internal quotations omitted).

[10] "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Munoz v. UPS Ground Freight, Inc.*, 2009 U.S. Dist. LEXIS 48755, 11 (N.D. Cal. June 5, 2009) (quoting *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004)).

Wash. Sept. 17, 2012). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (citation omitted). Thus, the risks and contingent nature of this TCPA class action justifies a multiplier.[11]

## 2.  The Novelty and Difficulty of The Issues Presented

The lodestar amount should be enhanced to account for the novelty and complexity of the questions involved. While Class Counsel were confident in their ability to succeed at class certification and at trial, success was by no means guaranteed, especially considering Defendant's substantial opposition and the complexity of the issues involved. In fact, the Federal Communications Commission has issued at least 4 declaratory rulings interpreting the TCPA since 2008. *See* http://transition.fcc.gov/cgb/policy/telemarketing.html. The claims in this case involved numerous issues of law that were complex and were novel (i.e., whether the equipment used constitutes an ATDS, whether and by what means putative class members consented to calls on their cell phones, and how to resolve any prior express consent issues on a class-wide basis).

Furthermore, although this area is becoming more heavily litigated, very few firms in the country are litigating TCPA cases on behalf of plaintiffs and in particular in the class action context.  TCPA litigation is still fairly new and Class Counsel are one of the few firms that would take on a risky TCPA case such as

---

[11] "Indeed, '[i]ndividual actions by . . . class members would be expensive and time-consuming for the parties and the Court and would create the risk of conflicting decisions.'" *Lo v. Oxnard European Motors, LLC*, 2011 U.S. Dist. LEXIS 144490, 10 (S.D. Cal. Dec. 15, 2011) (quoting *Duran v. Challenger Sheet Metal, Inc.*, No. 10cv2643, 2011 U.S. Dist. LEXIS 134363, at *8-9 (S.D. Cal. Nov. 21, 2011)). Also, the court in *ESI Ergonomic Solutions*, *supra*, 203 Ariz. 94 [50 P.3d 844] denied a motion to certify a TCPA class action, in part because the court considered the potential damages to be too high—between $45 million and $135 million.

this one. Nonetheless, Class Counsel agreed to represent the Class and, through their skill and effort, successfully overcame formidable defenses to obtain excellent relief for the Class. A multiplier of the lodestar used to cross-check the reasonableness of the fee is warranted under these circumstances. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (affirming enhanced fee where counsel "pursued this case in the absence of supporting precedents" and "against [defendant's] vigorous opposition throughout the litigation").

### 3.   The Customary Fee

Class Counsel's customary contingency fee, as are most contingency fees in the legal marketplace, is typically 33% of any recovery prior to trial. Nevertheless, Class Counsel chose to seek a contingency of only 11.3%, less than half of the Ninth Circuit benchmark award of 25%, and approximately one third of Class Counsel's customary contingency fee, as compensation for legal services on behalf of a nationwide class.

### 4.   The Experience, Reputation and Ability of Counsel

The reputation, experience, and ability of Class Counsel were essential to the success of this litigation. As noted in the accompanying declarations, Class Counsel have extensive experience in consumer litigation generally and in the class action context. Friedman Fee Decl. ¶¶ 6-27. Their skills in developing the factual and legal record and settling the case were essential to achieving this result.  Moreover, Class Counsel's history of aggressive, successful prosecution of consumer class actions made credible their commitment to pursue this litigation until it provided a fair result for the Class.   Through their skill, reputation, and ability, a substantial result was obtained.

### 5.   The Amount In Controversy and Results Obtained

LAC faced enormous potential statutory damages.[12]   By means of

---

[12] Confirmatory discovery revealed more than 132,000 cellular telephone numbers that likely received text messages.

settlement, Class Counsel have negotiated significant monetary benefits for the Class with a total value benefit to the Class Members of more than $5.2 million in tickets and savings vouchers, which serves to compensate Class members and also deter LAC from future similar conduct alleged to violate the TCPA.  The deadline for filing claims is still several weeks away, as of the time of filing this brief, so the number of claims to be filed is still unknown. However, one of the unique benefits of this Settlement is that regardless of how many claims are filed, each and every Class member who submits a claim will be compensated the average value of $40.00 by way of tickets and/or savings vouchers for submitting a claim by simply calling an 800 number or online. Ninth Circuit courts have long recognized that the result obtained by Class counsel is a principal factor in considering an enhanced lodestar multiplier. *See e.g.*, *Adams v. AllianceOne*, Case No. 08-CV-0248-JAH (S.D. Cal.) ($40 per claim); *Sarabi v. Weltman, Weinberg & Reis Co.,  LLP,* Case No. 10-cv-1777 AJB NLS (S.D. Cal.)  ($48.67 per claim); *Lemieux v. Global Credit and collection Corp.*, Case No. 08-CV-01012-IEG (S.D. Cal.) ($70 per claim).[13]

As noted in the preliminary approval papers, during the course of this litigation, LAC changed its business practices in an effort to prevent unlawful text messages to cell phones without prior consent, which is an important non-monetary benefit.

These excellent results strongly support an upward enhancement, leading this Court to state "[t]he settlement award that each class member will receive is fair, appropriate, and reasonable given the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainty of continued litigation…" *Malta v.*

---

[13] "Among the factors that judges typically examine in setting fees, the most important factor is probably that of 'awards in similar cases." Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, *supra*, at p. 3 (internal quotations omitted).

*Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731, 21 (S.D. Cal. Feb. 4, 2013). Further, the Settlement has additional value because society and competitive, compliant businesses benefit from the deterrent effect[14] of this settlement, serving to prevent a culture of non-compliance.

### 6.     Awards in Similar TCPA Class Actions

Experienced Class Counsel worked diligently to obtain this excellent settlement on behalf of the nationwide class. Significantly, the attorneys' fee awards in other TCPA class action settlements confirm the reasonableness of the requested award in this case. *See supra*.

### 7.     Few Objections, If Any, Are Anticipated

An anticipated low objection rate supports the fairness of the settlement. *See O'Brien v. Brain Research Labs, LLC*, 2012 U.S. Dist. LEXIS 113809, *41-42 (D.N.J. Aug. 8, 2012). A survey of several TCPA Class Actions reveals that the objection rate tends to be very low for these types of cases. *See e.g.*, *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, Case No. 10-CV-1777-AJB, Doc. 42 (S.D. Cal. Feb. 15, 2013) (only 3 objections out of 618,417 members, and two were later withdrawn); *Lemieux v. Global Credit and Collection Corp.*, 08-CV-01012-IEG (S.D. Cal. Sept. 20, 2011) (no objections to settlement); *Arthur, supra*, Case No. 10-CV-0198-JLR (W.D. Wash. Sept. 17, 2012) (only 34 objections out of approx. 5,000,000 members). Thus, consideration of these factors and applicable case law support an attorneys' fee award of 11.3% of the total settlement value, i.e., $600,000.00.

Therefore, Class Counsel should be awarded attorneys' fees and costs in the aggregate amount of $600,000.00 (i.e., 11.3% of the value of the Settlement), which is less than half of the Ninth Circuit's 25% benchmark.

---

[14] *See Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012) ("regardless of the number of settlement class members who file claims, Defendants submit the same amount into the settlement fund. Thus, Defendants are sufficiently deterred from future (alleged) TCPA violations...").

### D.    The Court Should Decline To Apply The Lodestar Method

As stated above, where a settlement produces a common fund for the benefit of the entire class, as in this case, the preferred method in the Ninth Circuit is to award a percentage of the settlement as fees.  However, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir.2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.2000)).  Under Ninth Circuit law, if a lodestar method is used, this Court can award a multiplier as the Court deems appropriate. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). *See also Staton*, 327 F.3d 97 (it is permissible to negotiate attorneys' fees).

Notably, this is not a fee shifting case. Fees are to be paid by agreement of the Parties, which agreement was freely negotiated with the assistance of a neutral third party retired judge, Hon. Judge Papas. Per agreement, Class Counsel may request $600,000.00 as compensation, or 11.3% percent of the value of the Settlement, for their quality legal work in this complex action to recover damages for consumers throughout the United States.

As discussed above, the Court should apply the percentage method in awarding fees and should decline to apply the lodestar method in this case, because settlement without multiple years of lengthy litigation, as in the present case, promotes the efficient resolution of disputes and is to be encouraged, not discouraged. *See In Re Activision Securities Litigation, supra; see Lewis v. Starbucks Corp.*, 2008 U.S. Dist. LEXIS 83192, 17 (E.D. Cal. Sept. 10, 2008) (In order to fairly distribute the costs of litigation under the common fund doctrine, and to properly compensate class counsel for their successful efforts on behalf of the class, the court found the request for attorneys' fees in the amount of 25% of the settlement fund was reasonable at the preliminary approval stage.  The court further stated: "Use of a lodestar calculation would punish Plaintiff's counsel for

22

the early proposed settlement, and thus may impede settlement efforts in similar cases." *Id.*).

Although the Ninth Circuit has noted a court may award a fee less than 25% based upon a lodestar calculation, the Ninth Circuit did "not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly," especially since "the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n. 5 (9th Cir. Wash. 2002).

In *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993), the court explained, "using the lodestar approach in common fund cases encourages significant elements of inefficiency. First, attorneys are given incentive to spend as many hours as possible, billable to a firm's most expensive attorneys. Second, there is a strong incentive against early settlement since attorneys will earn more the longer a litigation lasts."[15]   Thus, use of a lodestar calculation may serve to punish Class Counsel for the early settlement in this case, and thus may impede settlement efforts in similar TCPA class actions.[16] In any event, should the Court apply the lodestar method, a multiplier of 3.228 is appropriate in this case.[17]

---

[15] *See Manual for Complex Litigation* 4th Ed. §14.121 (2004) (the "lodestar method is difficult to apply, time consuming to administer, inconsistent in result, ...capable of manipulation, ...[and] creates inherent incentive to prolong the litigation").

[16] Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 RevLitig 525, 534 (1998) (percentage approach avoids numerous drawbacks of the lodestar approach and is preferable because "the attorneys will receive the best fee when the attorneys obtain the best recovery for the class. Hence, under the percentage approach, the class members and the class counsel have the same interest — maximizing the recovery of the class.")

[17] The first step in the lodestar method is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *See Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). Once this raw lodestar figure is determined, the court may take into consideration additional factors to enhance the

### 1.    <u>Class Counsel's Hourly Rates Are Reasonable</u>

The U.S. Supreme Court has stated:

> The statute and legislative history establish that 'reasonable fees' under section 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel.

*Blum v. Stenson*, 465 U.S. 886, 895 (1984) (footnote omitted).

Plaintiff submits that the hourly rates sought to be confirmed by Class Counsel litigating on behalf of the Plaintiff and the Class are reasonable and within the hourly rates charged for the same services within the community.

/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 

---

lodestar, including: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). *See* Section V.A. 1-6 for analysis of the lodestar multiplier factors here.

|  | Hours | Rate/Hr. | Total |
|---|---|---|---|
| Hours incurred by Partner: Todd M. Friedman | 157.8 | $495 | $78,111.00 |
| Hours incurred by Senior Associate: Nicholas J. Bontrager | 261 | $395 | $103,095.00 |
| Hours incurred by Junior Associate: Suren N. Weerasuriya | 16.5 | $250 | $4,125.00 |
| Hours incurred by Law Clerks/Paralegals | 3.4 | $150 | $510.00 |
| **Total Combined Lodestar** | 438.7 |  | $185,841.00 |

Law Offices of Todd M. Friedman, P.C. exclusively litigate consumer cases, both as individual claims and as class actions, having litigated well over 1,000 cases over the past four years. *See* Declaration of Todd M. Friedman in Support of Motion for Attorneys' Fees and Costs ("Friedman Fee Decl.") which details the extensive experience of not only Law Offices of Todd M. Friedman, P.C. as a firm, but also as to the experience and credentials of the attorneys who litigated the case. Their hourly rate sought is $495 for partners, $395 for senior associates, $250 for junior associates, and $150 for paralegals/law clerks, in this case. *See* Friedman Fee Decl. ¶¶ 6-32. Class Counsel seeks approval of those hourly rates.

The hourly rates sought here are justified in this legal community as other plaintiff's counsel with similar experience are awarded fees at a higher rate and rates charged by other firms are indeed higher than the rates charged here. *See* Friedman Fee Decl. For example, attached as Exhibit A to the Friedman Fee

Decl. is the National Law Journal article dated December 10, 2007, with the results of their annual law firm billing survey. That survey indicates that most California law firms in the survey, or California offices of national law firms, have median billing rates for partners that clearly support the $495 sought here by Mr. Friedman.[18]  *See* Friedman Fee Decl., Ex. A. Many firms charge comparable rates or more for associate attorneys, with presumably less experience than that of the associates involved here, and those fees are not contingent upon carrying the risk of not being paid if plaintiffs did not prevail.

Throughout this case, Class Counsel prosecuted the claims of consumers efficiently and effectively.  Knowing it was possible they would never be paid for their work, counsel had no incentive to act in a manner that was anything but economical. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (The court recognized that lawyers are not likely to inflate their time in contingency cases).

Plaintiff has submitted declarations of counsel working in the southern California legal community who litigate and are familiar with hourly rates charged in similar class and representative actions. (*See* Kazerounian, Swigart, Martin and Agruss Decls. filed herewith; Exhibit B to Friedman Decl.)   Plaintiff submits the hourly rates -- $495, $395 and $250 -- sought to be confirmed by Class Counsel on behalf of the Representative Plaintiff and the Class -- are

---

[18] In the 2007 time frame, partners at the California law firms billed out far in excess of $495 per hour. For example, Luce, Forward, Hamilton & Scripps in San Diego billed out its partners at a median hourly rate of $475, with a low of $325 and a high of $725 and associates at a low of $220 and a high of $450. (Page 7.)  Loeb & Loeb in Los Angeles billed its partners at a median of $600, with a low of $425 and a high of $875 and associates at a low of $240 and a high of $500. (Page 7.) Manatt, Phelps & Phillips in Los Angeles billed its partners at a median rate of $590 per hour, with low of $520 and a high of $785 and associates at a low of $265 and a high of $480. (Page 7.) Fenwick & West of the Silicon Valley in Mountain View, California billed its partners at a median rate of $600 per hour, with a low of $500 and a high of $775 per hour and associates at a low of $245 and a high of $500. (Page 4.)

reasonable and within the hourly rates charged for the same services within the community are entirely fair and reasonable given counsel's experience, qualifications and expertise.

Additionally, Class Counsel exercised sound billing judgment in this action and did not bill for each and every task engaged in litigating this action.

> Attorneys normally do not bill all hours expended in litigation to a client, and an applicant should exercise "billing judgment" with respect to a claim of the number of hours worked. To show billing judgment, "'counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary' . . . [and the] district court has a corresponding obligation to exclude hours not 'reasonably expended' from the calculation.

*Jackson v. Austin*, 267 F. Supp. 2d 1059, 1066 (D. Kan. 2003) (citations omitted).

The Supreme Court has rejected the argument that the fees must be proportional with the damages recovered. *City of Riverside v.* Rivera, 477 U.S. 561, 581, 106 S. Ct. 2686 (footnote omitted); *see also Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996); *Carroll v. Wolpoff & Abramson*, 961 F.2d 459 (4th Cir. 1992), cert. denied, 505 U.S. 905(1992) ("In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under [42 U.S.C.] 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves.")

Furthermore, the fact that the number of claims that may be ultimately filed are small does not have any effect on the negotiated Settlement Agreement containing the fees agreement. *Beecher v. Able*, 441 F. Supp. 426 (S.D. N.Y. 1977).  At the time of filing this motion, well in advance of the hearing date, and about 60 days prior to the claims deadline, Class Counsel does not know the total number of claims that will be filed, but if they are few in number, that should not be a factor that reduces the fees requested.

## 2.      A Multiplier of 3.228 Is Appropriate In This Case

The lodestar for the attorneys' fees incurred by the firm equals $185,841.00. The time incurred totaled 438.7 hours. However, it is only fair for the Court to apply a multiplier to these fees. In this case, Plaintiff's Counsel strongly urges the Court to use a multiplier of 3.228. Such a multiplier here is reasonable given the outstanding results Class Counsel have achieved for the Settlement Class, the risks involved in pursuing these claims, and the complexity of these TCPA cases. *See MCL* 4th § 14.122, at 261. Through this Settlement, Class Counsel achieved a total valued settlement for the Class Members in excess of $5.2 million, which is itself a major accomplishment. The requested multiplier is likely to decrease given that Class Counsel expects to expend an additional estimated 20-50 hours seeing this case through its final resolution. *See* Friedman Fee Decl. ¶ 29.  Furthermore, as explained above, Plaintiffs' requested multiplier falls well within the range of multipliers approved in a common fund case.[19] Therefore, in light of this authority, including a host of factors explained above, to the extent the lodestar method is used, Plaintiff's request for a multiplier of 3.228 is appropriate in this case to award Class Counsel for the outstanding result achieved for the Class and early resolution of this dispute.

## VI.   PAYMENT OF LITIGATION COSTS IS FAIR AND REASONABLE

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F.

---

[19] *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving 3.65 multiplier); *Keith v. Volpe*, 86 F.R.D. 565, 575-77 (C.D. Cal. 1980) (awarding multiplier of 3.5); *In re Beverly Hills Fire Litigation*, 639 F. Supp. 915, (E.D. Ky. 1986) (awarding multiplier of 5 for lead counsel); *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (approving 5.3 multiplier); *Bellows v. NCO Financial Systems, Inc.*, No. 07-CV-1413-W (AJB) (S.D. Cal.) (Judge Whelan awarded $299,253 in attorneys' fees in a TCPA class action based on a lodestar multiplier of 1.793%).

Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)). The modest litigation expenses Class counsel incurred in this case were necessary to secure the resolution of this litigation.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation).

Throughout the course of this litigation, Class Counsel had to incur costs totaling $1,215.00.  Friedman Fee Decl. ¶ 30.  The modest litigation expenses Class Counsel incurred in this case include the following: (1) filing and service fees; and (2) mediation expenses. *See id.* Class Counsel incurred these costs without assurance that they would ever be repaid. Friedman Fee Decl. ¶30. These costs were necessary to secure the resolution of this litigation. *See id.* Class Counsel have not charged for facsimile transmissions, long distance telephone calls or on-line research.

The Class Notice informed Class Members that Class Counsel would seek an award of fees and costs in the aggregate amount not to exceed $600,000.00. In light of the expenses Class Counsel has had to incur to bring this case to its current settlement posture, Class Counsel's request for costs in the amount of $1,215.00 is reasonable.

## VIII.  PLAINTIFF IS ENTITLED TO A $1,000 INCENTIVE AWARD

Class representatives are often provided incentive payments for their efforts in bringing a class action and their participation therein. The court in *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal., 1995) held such incentive payments were justified in class actions, subject to the court's discretion. In *Van Vraken*, the court awarded the class representative $50,000 as an incentive payment for participating in many telephone conferences and

meeting with his attorneys over several years, was deposed twice and he testified in trial.

Here, the parties agreed upon a payment of a $1,000 incentive award to the Representative Plaintiff in the Settlement Agreement, subject to Court approval. Agr., § 6. Such award is extremely modest under the circumstances, and well in line with awards approved by federal courts. *See Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329-30 & n. 9 (approving $7,500 incentive awards where named plaintiffs assisted Class counsel, responded to discovery, and reviewed settlement terms, and collecting decisions approving awards ranging from $5,000 to $40,000). Notably, California courts have even awarded $5,000 incentive awards on several occasions in TCPA class action settlements. *See Lemieux v. Global Credit and collection Corp.*, Case No. 08-CV-01012-IEG (S.D. Cal.) ($5,000 incentive fee to representative plaintiff); *Adams v. AllianceOne*, Case No. 08-CV-0248-JAH (S.D. Cal.) ($5,000 incentive fee to representative plaintiff Adams, $2,500 each to two additional class representatives); *see also Gutierrez v. Barclays Group*, Case No. 10-CV-1012-DMS (S.D. Cal.) ($10,000 incentive fee to both representatives).

Plaintiff came forward to serve as the class representative, kept abreast of the litigation, assisted in discovery responses, and approved the proposed settlement terms after reviewing them and consulting with Class Counsel. *See* Decl. of Ari Friedman in Support of Motion for Attorneys' Fees and Costs and Class Representative Incentive Payment. Unlike unnamed passive class members, named class representatives agree to be the subject of discovery, including making themselves available as witnesses at deposition and trial, and subject themselves to other obligations of named parties. Plaintiff is entitled to a small incentive payment of $1,000 in light of his effort and risk undertaken.

///

///

**IX.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court grant the requested award of attorneys' fees and costs incurred in the aggregate amount of $600,000.00, and an incentive payment of $1,000 to the Representative Plaintiff.

Respectfully submitted this 2nd day of June, 2014.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.


By:    /s/ Todd M. Friedman

Todd M. Friedman
Attorney for Plaintiff

**PROOF OF SERVICE**

I, Todd M. Friedman, state the following:

I am employed in Los Angeles, California; I am over the age of 18 and am not a party to this action; my business address is 324 S. Beverly Dr., Ste. 725, Beverly Hills, CA 90212.  On June 2, 2014, I served the following documents:

**NOTICE OF AND PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE INCENTIVE PAYMENT; DECLARATION OF TODD M. FRIEDMAN; DECLARATION OF ARI FRIEDMAN**

On the parties listed below:

ADRIANNE E. MARSHACK
E-mail:  AMarshack@katzyoon.com
4 Park Plaza, Ste. 1040
Irvine, CA  92614

By the following means of service:

[X]    **BY ELECTRONIC CASE FILING:** I filed the submitted the document listed above via the court's Electronic Case Filing (ECF) system which provides electronic mail (email) service of the listed document directly to the party listed above to his/her "email address of record."

[X]    **STATE:** I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on June 2, 2014, at Beverly Hills, California.

By: _/s/ Todd M. Friedman
                        Todd M. Friedman