**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (SBN 216752)
Nicholas J. Bontrager (SBN 252114)
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@attorneysforconsumers.com
nbontrager@attorneysforconsumers.com
***Attorneys for Plaintiff***

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ARI FRIEDMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** ) | Case No. CV13-00818 CBM (ANx) |
| ) | |
| Plaintiff, ) | **CLASS ACTION** |
| ) | |
| ) | **PLAINTIFF'S SUBMISSION OF** |
| ) | **CLASS COUNSEL'S STATEMENT** |
| ) | **OF SERVICES; SUPPLEMENTAL** |
| vs. ) | **BRIEFING RE: MOTION FOR** |
| ) | **ATTORNEYS' FEES AND COSTS** |
| ) | **AND CLASS REPRESENTATIVE** |
| ) | **INCENTIVE PAYMENT** |
| ) | |
| **LAC BASKETBALL CLUB, INC.,** ) | |
| ) | |
| Defendant. ) | **Hon. Consuelo B. Marshall** |
| ) | |
| ) | |
| _____ ) | |

///

///

///

**1**

## <u>TABLE OF CONTENTS</u>

**I.      INTRODUCTION AND PROCEDURAL BACKGROUND**…...…....…3

**II.     CLASS COUNSEL'S DETAILED TIMESHEETS AND TIME
         SUMMARY ARE ATTACHED AS "EXHIBIT A"**………...…..……4

**III.    THE SETTLEMENT IS NOT A "COUPON" SETTLEMENT**………4

**IV.     A PERCENTAGE-OF-THE-FUND CROSS-CHECK CONFIRMS
         THE REASONABLENESS OF THE REQUESTED FEE AWARD**.....9

        **A.    The Settlement Creates a Common Fund of Benefits to the
               Settlement Class and the Court Should Utilize the Percentage
               Cross-Check**………………………………………………10

        **B.    The Requested Fee Award is Only 11.3% of the Value of the
               Settlement and Thus <u>Less Than Half</u> of the 25% Benchmark
               Used in the Ninth Circuit**…...……………………………12

**V.      A LODESTAR CROSS-CHECK CONFIRMS THE
         REASONABLENESS OF THE REQUESTED FEE AWARD**…...…..14

        **A.    Counsel's 438.7 Expended Hours Were Reasonably and
               Necessarily Incurred**…………………………………..…15

        **B.    Counsel's Hourly Rates Sought Are Reasonable and In Fact Less
               Than Hourly Rates Sought and/or Awarded to Similarly
               Experienced Counsel**………………………………………..17

        **C.    A Risk Multiplier of 3.228 is Warranted, Justified and
               Commensurate with Multipliers Applied to Other Class Actions
               Within the Ninth Circuit**…………………………………19

**VI.     CONCLUSION**……………………………….…………………26

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Law Offices of Todd M. Friedman, P.C. ("Class Counsel" or "Counsel"), appointed Class Counsel and counsel of record for Plaintiff and Class Representative, ARI FRIEDMAN, hereby submits this Supplemental Briefing at this Honorable Court's request and in further support of Class Counsel's unopposed Motion for Attorneys' Fees and Costs and Class Representative Incentive Payment. Defendant LAC BASKETBALL CLUB, INC. ("LAC" or "Defendant") does not oppose Class Counsel's request for attorneys' fees and costs in the aggregate sum of $600,000.00 and has filed a statement to that effect.

## **I.    INTRODUCTION AND PROCEDURAL BACKGROUND**

On June 2, 2014, Plaintiff and Class Counsel filed both a Motion for Final Approval of Class Action Settlement (Dkt. #64) and a Motion for Attorneys' Fees and Costs and Class Representative Incentive Award (Dkt. #65).  On June 30, 2014, Class Counsel and counsel for Defendant appeared before this Honorable Court to conduct a Fairness Hearing as to the preliminarily approved Settlement in addition to presenting argument to this Honorable Court pertaining to the attorneys' fees and Class Representative incentive award requested.  At the conclusion of said hearings, the Court took the matters under submission.  (Dkt. #69).

On July 8, 2014, this Honorable Court granted final approval of the Settlement, finding that the settlement is "fair, adequate and reasonable."  (Dkt. #72).  In addition, the Court issued an order directing Class Counsel to submit evidence of Counsel's hours incurred and the subject matter of such tasks performed in this case.  (Dkt. #72).  Per this Honorable Court's order, Class Counsel respectfully submits documentation detailing all hours performed by Counsel in this matter.  *See* Class Counsel's Statement of Services attached hereto as "Exhibit A."

In addition, and based upon the discussions held at the June 30, 2014 hearing, Class Counsel also takes this opportunity to respectfully address some of the Court's questions regarding the requested attorneys' fees and costs. Specifically, Class Counsel provides additional authority and argument in support of Counsel's position that the Settlement is not a "coupon" settlement as well as providing further analysis under both a "lodestar" and "percentage of the recovery" approach to support Counsel's position that the requested attorneys' fees and costs are warranted, fair and reasonable.

## II.   CLASS COUNSEL'S DETAILED TIMESHEETS AND TIME SUMMARY ARE ATTACHED AS "EXHIBIT A"

Per this Honorable Court's July 8, 2014 Order (Dkt. #71), Class Counsel hereby submits timesheets which detail: 1) the date of each task performed; 2) the attorney or paralegal who performed each task; 3) the specific task(s) performed; and 4) the total time incurred for each task, exacted to 0.1 hour increments (or 6 minutes). In sum, *and not including* the additional time incurred in preparing for and appearing at the June 30, 2014 hearing, the additional time incurred in overseeing the continued efforts of the Class Administrator's management of the Settlement, and the time incurred in researching and preparing the instant Supplement Briefing, Class Counsel has incurred 438.7 hours in prosecuting this matter. *See* Counsel's Statement of Services attached hereto as Exhibit A.

## III.   THE SETTLEMENT IS NOT A "COUPON" SETTLEMENT

California district courts have regularly defined "coupon" settlements when the relief consists of "a discount on another product or service offered by the defendant in the lawsuit." *In re HP Inkjet Printer Litigation*, 2011 WL 1158635, at *5 (N.D.C.A. 2011). At the June 30, 2014 hearing, this Honorable Court noted that the Ninth Circuit reversed the district court's ruling in *In re HP Inkjet*, which is noted by Counsel. However, the district court's ruling that the settlement obtained in that matter *was a coupon settlement* was not reversed by the Ninth

Circuit.  Class Counsel instead cites to *In Re HP Inkjet* in order to distinguish the instant Settlement as it is not a "coupon" settlement.

The *In Re HP Inkjet* settlement merely allotted a $5.00 "e-credit" to each class member. *Id*. at *2.  Further, the "e-credits" were non-transferrable and could not be used with any other offers, sales or discounts offered by HP.  *Id*. at *5.  Thus, in so holding that the settlement constituted a "coupon" settlement, the court held that, "[t]he fact that the credits are nontransferable, redeemable only at HP.com, and cannot be used with other coupons or discounts significantly reduces their cash value. In many ways, the e-credits are indistinguishable from a marketing technique HP might employ to attract consumers to its commercial website." *Id*. at *6.

In contrast, the Settlement in this matter is clearly distinguishable.[1]  First, the Settlement Class Members, at their election, can receive free tickets to a Los Angeles Clippers home game.  These tickets provide a Settlement Class Member with free admission to a professional basketball game which does not require the purchase of any goods or services to realize the Settlement benefit.  Further, there is no restriction on the free tickets which would preclude a Settlement Class Member from opting to transfer said tickets for cash on the open market by selling the tickets at face value (or potentially even more) to other consumers who wish to attend the game.  On the other hand, for the Settlement Class Members who elect to receive the savings vouchers, there likewise is no restriction on the use or transferability of the vouchers.  A Settlement Class Member can utilize the voucher to purchase goods either online or at the Clippers store located at the Staples Center, can choose to utilize the vouchers in connection with any existing sales, promotions or discounts offered either online or at the physical store or can opt to transfer the vouchers to cash by selling the vouchers on the open market to

---

[1] In addition to the fact that the instant Settlement provides a value eight (8) times that of the $5.00 "e-credit" offered to each class member in *In Re HP Inkjet*.

others who may wish to purchase them.  Thus, in light of the rationale and ruling of the *In Re HP Inkjet* Court, the instant Settlement does not constitute a "coupon" settlement.

In *Browning v. Yahoo!, Inc.*, 2007 WL 4105971 (N.D.C.A. 2007), the District Court specifically rejected arguments by objectors that the class action settlement constituted a "coupon" settlement.  In *Browning*, the class action settlement reached provided class members with either a free Experian credit score ($5.00 retail value) or two months of free credit monitoring service ($9.95/mo retail value) in addition to remedial relief in the form of rephrasing of certain language allegedly in violation of CROA.  *Id*. at *3-4.  In holding that the settlement was *not* a "coupon" settlement the court stated that:

> [s]ome objectors complained that the Amended Settlement is a 'coupon settlement' or that the benefits are not transferable on a secondary market.  **However, the in-kind relief offered in this case is not a 'coupon settlement' because it does not require class members to spend money in order to realize the settlement benefit.**  Further the objectors cite no controlling authority requiring an in-kind benefit to be transferable.

*Id*. at *5 (emphasis added).

Much like that of *Browning*, which was specifically found not to be a "coupon" settlement, the instant Settlement does not require a Settlement Class Member to spend a single penny in order to realize the benefits afforded to him or her.[2]  As stated *supra*, each Settlement Class member, at his or her own election, will receive either two (2) free tickets to a Los Angeles Clippers home game, or

---

[2] It should also be noted that the instant Settlement, which provides for an average value of $40.00 to each and every Class Member who submits a valid claim, provides relief that ranges from two (2) to eight (8) times the value provided for the individual class members in *Browning*.

one (1) free ticket and one (1) savings voucher in the sum of $20.00.  No Class Member must spend a single penny to attend the professional basketball game. He or she must simply bring the ticket(s) to the Staples Center to gain admission and can enjoy a professional basketball game at no expense at all.  Further, for those Class Members who elect to receive a savings voucher, he or she can utilize the voucher to purchase one of nearly a dozen products or merchandise which are available for less than the $20.00 voucher, thus obtaining his or her choice of memorabilia without having to expend a single penny of his or her own money. Thus, in light of the rationale and ruling of the *Browning* Court, the instant Settlement does not constitute a "coupon" settlement.

In the matter of *True v. American Honda Motor Company*, 749 F.Supp.2d 1052 (C.D.C.A. 2010), the Hon. Virgina A. Phillips of this judicial district found that the proposed class action settlement did constitute a "coupon" settlement *because* the rebates offered to the class required a purchase of an automobile in order to realize the rebate benefits.  The rebate component of the *True* settlement offered class members a rebate of $500.00 or $1,000.00 *provided that the class member purchase* an "eligible Honda vehicle."  *Id*. at 1060.  In so holding, the court found that "[t]he primary relief offered by this settlement is the $500 or $1000 rebate given to class members *who purchase another Honda or Acura over the next nineteen months*. Thus, the settlement is largely a "coupon settlement." *Id*. at 1069 (emphasis added).

Here, the Settlement does not require a single purchase by the Settlement Class Members to utilize the free tickets to attend a basketball game or to utilize the saving voucher (if a Class Member elects to receive a voucher in the first place, which only 5% of the Class Members have done).  Clearly, requiring a class member to purchase an automobile, which is likely to cost tens of thousands of dollars, to realize a $500 or $1,000 rebate is a "coupon" settlement and Class Counsel does not dispute the *True* Court's holding in that regard.  However, the

*True* Court again confirms the view of California district courts that in order for a settlement to be deemed a "coupon" settlement, the class members must be required to make a purchase to obtain the settlement benefits.   As no such purchase requirement exists in the instant Settlement, it should not be deemed a "coupon" settlement.

District courts in California have also found strikingly similar TCPA class action settlements to not constitute a "coupon" settlement when class members were provided certificates which could be used to obtain goods or services offered by the defendants.  In the matter of *Kazemi v. Payless Shoesource, Inc.*, 2010 WL 963225 (N.D.C.A. 2012), which was also a TCPA class action based upon allegedly violative text messages, the settlement benefits relief afforded to the class consisted of $25.00 merchandise certificates which could be used towards the purchase of footwear offered by the defendant.  In *Kazemi*, there was no finding by the court that the settlement constituted a "coupon" settlement.  In fact, the final approval order awarded class counsel fees on a cash basis in viewing the certificates offered to the class created a common fund.  Further, in the matter of *In Re Jiffy Lube International, Inc. Text Spam Litigation*, 3:11-md-02261-JM-JMA, Dkt. 97 (S.D.C.A. Feb. 20, 2013), also a TCPA text message class action, the settlement benefits took the form of certificates to the class with approximate $20.00 value for automobile services from the defendant.  Not only did the court not find that the settlement constituted a "coupon" settlement, but the court found the settlement as one creating a common fund benefit to the class and awarded fees to class counsel on the basis of a percentage of the fund.  *See* Decl. of Friedman in Support of Mot. For Fees (Dkt. #65).

In further support of Counsel's position, it should be noted that the three common problems associated with "coupon" settlements are not present in this case.  As the *True* Court pointed out, the problems with "coupon" settlements are that, "they often do not provide meaningful compensation to the class members;

they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation." *True* at 1069. Here, the Class Members are indeed receiving meaningful compensation as each Class Member is receiving an average value of $40.00 which takes the form of either free admittance to a Los Angeles Clippers basketball game or savings vouchers of $20.00 each; thus, this is not a case of *de minimums* compensation.[3] Also, the claims presented here allege that Defendant LAC invaded the privacy of the Settlement Class by transmitting text messages to the Class Members' cellular telephones and thus there are no ill-gotten gains to return. Lastly, each Settlement Class Member is free to transfer either the free tickets or the savings vouchers for cash on the open market without any restriction and thus not forcing any Class Member to do future business with Defendant LAC.

## IV.   A PERCENTAGE-OF-THE-FUND CROSS-CHECK CONFIRMS THE REASONABLENESS OF THE REQUESTED FEE AWARD

Federal Rule of Civil Procedure 23(h) permits the award of reasonable fees in a class action if authorized by law or the agreement of the parties. *Fed. R. Civ. P.* 23(h). Courts strongly encourage negotiated fee awards in class action settlements. *See Hensly v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will the amount of the fee."). Here, the parties have negotiated a fee award not to exceed $600,000.00. Under both a "percentage-of-the-fund" and "lodestar" cross-check, this Honorable Court is justified in approving the requested fee award as reasonable.

---

[3] "A $5 or $30 award, therefore, represents 5% to 30% of the recovery that might have been obtained. This is not a *de minimis* amount." *See In Re Toys R Us*, 295 F.R.D. 438, 454 (C.D.C.A. 2014).

**A.     The Settlement Creates a Common Fund of Benefits to the Settlement Class and the Court Should Utilize the Percentage Cross-Check**

The United States Supreme Court has "consistently recognized that a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); see also *In Re Bluetooth Headset Products Liability Litigation*, 654 F. 3d. 935, 942 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F. 2d. 1031, 1311 (9th Cir. 1990) ("[b]ecause the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar…"). Further, the percentage of the common fund approach is the preferred method of determining a requested fee award as "applying the lodestar or *Kerr–Johnson* regime to common fund cases does not achieve the stated purposes of proportionality, predictability and protection of the class. It encourages abuses such as unjustified work and protracting the litigation. It adds to the work load of already overworked district courts. In short, it does not encourage efficiency, but rather, it adds inefficiency to the process." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

Notably, the use of the percentage of the fund approach is not limited to only those settlements which create a traditional cash common fund. The Ninth Circuit has recognized the existence of a common fund settlement when the results consisted mainly of relief beyond cash. See *Wing v. Asarco Inc.*, 114 F. 3d 986, 990 (9th Cir. 1997) (calculating common benefit of $67.5 million in case involving contamination of residential soil, consisting of $500,000 fund for medical monitoring, $1.5 million for depreciation of property value, $5 million in cash and other potential benefits depending on recovery from insurance carriers);

*Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998) (applying percentage of fund approach to common benefit of $115 million, which represented the amount a manufacturer charged against its earning for the replacement/installation of allegedly defective automobile door handles).

Further, in recent and similar TCPA class action settlements, district courts in California have found a common fund benefit when the settlement comprised of gift certificates or savings vouchers to the class members.  In *In Re Jiffy Lube*, 3:11-md-02261-JM-JMA (S.D.C.A 2011), the class-wide settlement reached afforded the class members with gift certificates up to $20 off of automobile services offers by defendant Jiffy Lube.  The parties valued the total benefit of the certificates to the class members at $46.8 million.  *Id*.  Class counsel in that matter then petitioned the court for a fee award of $4.75 million, which was granted by the court.  In approving the fee award, the court stated that:

> **In this Circuit, a 25 percent fee is the accepted "benchmark" in common fund cases.**  *See Vizcaino v. Microsoft Corp.*, 290 F. 3d. 1043, 1048-50 (9th Cir. 2002).  In assessing the Fee Award, the Court has considered the results achieved in this litigation, the risks of litigation, the skill required of Class Counsel and the quality of their work, the contingent nature of the fee and the financial burden carried by the Plaintiffs, and awards made in similar cases.  In light of these factors, **the Court finds this Fee Award to be fair and reasonable, given that it represents approximately 13.51% of the total common financial benefit to the Class of the Certificates**, exclusive of the value of the injunctive relief contained in the Settlement Agreement and exclusive of the costs of settlement administration and of mailing Notice, which were paid for by Heartland.

*In Re Jiffy Lube*, 3:11-md-02261-JM-JMA (S.D.C.A 2011)(Dkt. #97).

**B.**   **The Requested Fee Award is Only 11.3% of the Value of the Settlement and Thus <u>Less Than Half</u> of the 25% Benchmark Used in the Ninth Circuit**

It is well settled that courts within the Ninth Circuit utilize a "benchmark" fee award of 25% of the value of the settlement to the class members when gauging the reasonableness of the fee requested. As per the Ninth Circuit Court of Appeals, "[a]pplying this calculation method, courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure. *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990); *accord Powers,* 229 F.3d at 1256–57; *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir.1989). *In re Bluetooth* at 942.

Notably, it is appropriate to value the common fund benefit to the class based upon the total fund available and not just those funds which have been claimed by class members. *See Williams v. MGM-Pathe Commc'ns Co.* 129 F. 3d 1026, 1027 (9th Cir. 1997) (benchmark for fee award is 25% of entire fund, and district court abused its discretion in basing award on actual distribution to the class).

As established in Counsel's opening brief and *supra*, the instant Settlement has created an easily ascertainable common fund benefit to the class of $5,283,920.00, *excluding* the value of the injunctive relief afforded to the class and the general public as a whole, which would actually increase the value of the Settlement overall.   Thus, pursuant to the Ninth Circuit, a "benchmark" reasonable fee in this matter is $1,320,980.00.   Notwithstanding, the parties agreed that Class Counsel would not apply for a fee award in excess of $600,000.00, which represents only 11.3%, *less than half*, of the presumptive reasonable benchmark fee in this matter.

The requested fee award is thus not only reasonable when viewed against the backdrop of the 25% benchmark, but becomes even more so in light of the plethora of cases that actually awarded fees *greater than* the 25% benchmark. *See, e.g., Palmer v. Nigaglioni*, 508 Fed.Appx. 658 (9th Cir. 2013) ("The district court did not abuse its discretion in approving an attorney's fees award the sum of 28% of the gross common fund recovery."); *Hopkins v. Stryker Sales Corp.*, No. 11-2786, 2013 U.S. Dist. LEXIS 16939, at *2 (N.D. Cal. Feb. 6, 2013) (awarding 30 percent of the fund); *Vasquezv. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3 % of the total settlement value"). More particularly, "*in cases under $10 million, the awards more frequently will exceed the 25% benchmark.*" *Lopez v. Youngblood*, No. 07-474, 2011 U.S. Dist. LEXIS 99289, at *36 (E.D. Cal. Sept. 1, 2011) (emphasis added); *see also In re Nuvelo Sec. Litig.*, No. 07-4056, 2011 U.S. Dist. LEXIS 2260, at *7 (N.D. Cal. July 6, 2011) ("30% reasonably compares to other awards for a $10M settlement."); *Adoma v. University of Phoenix, Inc.*, 913 F. Supp. 2d 964, 983 (E.D. Cal. 2012) (awarding 29 percent of common fund as attorney's fee); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 457, 463 (9th Cir. 2000) (affirming fee award of 33 1/3% of fund); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (award of 33% of settlement fund as fees affirmed); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 U.S. Dist LEXIS 26544, at *10 (S.D. Cal. Mar. 30, 2009) (30% for first $10 million and 25% for additional $2 million settlement); *Morris v. Lifescan, Inc.*, 54 Fed. App'x 663 (9th Cir. 2003) (affirming fee award of 33% of fund); *In re P. Enterprises Securities Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming an award to class counsel equal to one third of the $12,000,000 common fund); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87-0979G(CM), 1991 WL 427893, at *4 (S.D. Cal. May 6, 1991) (awarding class counsel 33% of the $3,098,000 common fund).

13

Based upon the foregoing, this Court would be justified in adopting the preferred percentage-of-the-fund cross-check to determine the reasonableness of the requested fee award.  In doing so, this Honorable Court can conclude that a fee award of 11.3% of the common fund benefit, which is less than half of the presumptively reasonable 25% benchmark fee, is warranted, justified and reasonable in this matter and should be approved.

## V.    A    LODESTAR    CROSS-CHECK    CONFIRMS    THE    REASONABLENESS OF THE REQUESTED FEE AWARD

Even should this Court decline to utilize the preferred percentage-of-the-fund approach in cross-checking the reasonableness of the requested fee award, Class Counsel's requested fee is reasonable via a lodestar cross-check and should be approved.

The first step in calculating the lodestar amount is to multiply the reasonable number of hours expended by a reasonable hourly rate. "Reasonable hours" are those "reasonably necessary to perform the legal services for which compensation is sought." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 553 (1986) *supplemented*, 483 U.S. 711 (1987).  "Once it sets the number of reasonable hours, 'the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees.' *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986), *amended,* 808 F.2d 1373 (9th Cir.1987). A district court should calculate this reasonable hourly rate 'according to the prevailing market rates in the relevant community' *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984), which is typically the community 'in which the district court sits.' *Davis v. Mason County,* 927 F.2d 1473, 1488 (9th Cir.), *cert. denied,* 502 U.S. 899, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991)."  *Schwarz v. Sec. of Health & Human Svcs*, 73 F.3d 895, 906 (9th Cir. 1995).

### A.     Counsel's 438.7 Expended Hours Were Reasonably and Necessarily Incurred

From this case's inception to June 2, 2014, approximately eighteen (18) months, Class Counsel billed a modest 438.7 hours in litigating this contested nationwide class action law suit.  *See* Exhibit A.  Notably, Class Counsel did not bill the voluminous hours incurred in preparing for and attending the June 30, 2014 Fairness Hearing or researching, drafting and submitting the instant supplemental billing.  *See* Exhibit A.  What is more, Class Counsel exercised sound billing discretion by reducing the billable hours incurred in addition to completely refraining from billing the countless hours incurred for tasks such as preparing, receiving/reviewing and discussing the hundreds, if not thousands, of emails transmitted between Class Counsel both internally and with counsel for Defendant. *Id*.

Overall, Class Counsel filed the suit, successfully researched and drafted responses to a dispositive motion at the onset of the litigation which threatened to have the matter dismissed, propounded and responded to written discovery, personally and meticulously reviewed over three thousand pages of documents turned over in discovery, researched, prepared and filed a motion for class certification, prepared for and attended an all day mediation, negotiated and revised settlement agreements and class notice devices for several months, researched and prepared motions for preliminary and final approval of the Settlement and two separate motions pertaining to the requested fee award.  *See generally* Dkt. #1 – 72. As a direct result of Counsel's time, effort and skill, Class Counsel obtained a very favorable result on a class-wide basis for more than 130,000 individual consumers and successfully obtained final approval of said Settlement.

Further, as evidenced by Counsel's Statement of Services, Counsel did not enlist numerous attorneys to perform the aforementioned tasks in litigating this

case to a successful conclusion.  Indeed, Counsel relied almost exclusively on the time and efforts of founding attorney Todd M. Friedman and senior associate Nicholas J. Bontrager.  In fact, Mr. Friedman's and Mr. Bontrager's combined hours encompass *95% of the total hours incurred* by the Law Offices of Todd M. Friedman, P.C. in this matter (combined 418.8 hours of the total 438.7 hours billed).  As Class Counsel's timesheets support, Counsel efficiently delegated specific tasks to each attorney with minimal, though necessary, time spent having both attorneys working on the same task. However, when such time was incurred, it was simply the good practice of reviewing and discussing litigation strategy and motions/pleadings which ultimately resulted in the successful class-wide settlement.

The Ninth Circuit has held that "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of efforts." *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n. 9 (9th Cir. 1989); *McGrath v. County of Nevada,* 67 F.3d 248, 255 (9th Cir. 1995).  Furthermore, conferences regarding the case are to be expected especially when a partner and an associate are involved.  "In most instances when associates are employed to work under the supervision of a partner, there is some duplication of time in that the associate must report and the partner must review."  See, e.g., *American Petroleum Institute v. Environmental Protection Agency*, 72 F.3d 907, 916 (D.C. Cir. 1996); *Massachusetts Dept. of Public Health v. School Committee of Tewksbury*, 841 F. Supp. 449, 459 (D. Mass. 1993).  In fact, similar billing discretion in a consumer class action has been approved as reasonable by the Central District as recently as January 17, 2014, when the Hon. Margaret M. Morrow held:

> The court has reviewed the time records submitted, and finds that the overall number of hours requested by class counsel is reasonable. It does not appear that

counsel engaged in duplicative or excessive billing. The time records do not show, for example, that they spent inordinate amounts of time reviewing or editing each other's work. Where multiple counsel worked on a motion, it appears that one counsel took the lead in drafting the motion, and one or two others drafted or edited small portions of the motion that were relevant to their particular clients' case and prepared supporting declarations. This is not a case in which class counsel designated a co-author at each law firm to participate in drafting each pleading submitted, multiplying the number of billed hours by the number of law firms representing plaintiffs.

*In Re Toys "R" US – DELAWARE, INC.*, 295 F.R.D. 438, 466 (C.D.C.A 2014).

In further support of Counsel's reasonable hours incurred, Class Counsel has provided this Honorable Court with three (3) declarations from experienced complex/class action litigators who regularly practice within this district. *See* Exhibit B. All three attorneys have extensive experience in prosecuting complex and class action matters and all attest that the hours incurred by Class Counsel and work performed were both reasonable and necessary. *Id.*

In sum, Class Counsel's timesheets, the declarations of other local class action litigators, legal authority and ultimate successful conclusion of the case all support the position that Class Counsel's 438.7 hours are reasonable.

**B.    Counsel's Hourly Rates Sought Are Reasonable and In Fact Less Than Hourly Rates Sought and/or Awarded to Similarly Experienced Counsel**

Class Counsel seek the following hourly rates: $495/hr for Todd M. Friedman, $395/hr for Nicholas J. Bontrager, $250/hr for Suren N. Weerasuriya and $150/hr for paralegals Erika Campany and Jason Rea. In Counsel's opening brief (Dkt. #65) Counsel supported the requested hourly rates with the declarations of three (3) attorneys with extensive experience litigating similar

consumer claims, complex claims and class action claims in the Central District of California. *Id.* Abbas Kazerounian, G. Thomas Martin III and Michael S. Agruss all declared that the hourly rates sought by Class Counsel are reasonable and *in fact lower than* hourly rates charged by attorneys with similar experience in the Central District. *See* Decls. of Kazerounian, Martin and Agruss in support of Plaintiff's Motion for Attorneys' Fees and Class Representative Incentive Award (Dkt. #65). In further support, Counsel submitted the 2007 National Law Journal's Billing Survey, which showed several California law firms billing at higher hourly rates than those sought by Counsel in the instant matter. *Id.*

In addition to the aforementioned support, Class Counsel now submits an *additional* three (3) declarations from experienced complex and class action litigators who regularly litigate in the Central District of California. Ari Moss, John Kristensen and Joshua B. Swigart further declare that the hourly rates sought by Class Counsel are reasonable and *in fact lower than* hourly rates charged by similarly experienced attorneys who litigate in the Central District. *See* Decls. of Moss, Kristensen and Swigart attached hereto as Exhibit B.

What is more, both the Ninth Circuit Court of Appeals and the Central District of California have routinely awarded hourly rates *far greater* than those sought by Counsel in the instant matter. *See*, *e.g.*, *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (affirming partner rates of $875, and associate rates of $425); *Browne v. American Honda Motor Co., Inc.*, 2010 U.S. Dist. LEXIS 144823, 2010 WL 9499073 (C.D. Cal. Oct. 5, 2010), (finding that an hourly rate of $545 was reasonable for an attorney who had been practicing in Los Angeles for 10 years and that $445 was reasonable for an attorney with 7 years of experience); *Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675 for class counsel in consumer class action); see also *POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07-2633, 2008 U.S. Dist. LEXIS 110460, 2008

---

**18**

WL 4351842, *4 (C.D. Cal. Sept. 22, 2008) (finding rates of $475 to $750 for partners and $275 to $425 for associates reasonable in consumer class action); *see also Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1122 (C.D. Cal. 2008) (finding a $225 rate reasonable for paralegals); *Vasquez*, 2011 U.S. Dist. LEXIS 83696, 2011 WL 3320482 at *2 (finding $210 and $200 rates reasonable for paralegals); *Bernal v. Paradigm Talent & Literary Agency*, CV 07-06445 SVW (PLAx), 2010 U.S. Dist. LEXIS 142572, 2010 WL 6397561, *5, 7 (C.D. Cal. June 1, 2010) (finding a paralegal rate of $225 reasonable); *L.A. Printex Indus., Inc. v. William Carter Co.*, No. CV 09-2449-JFW (FMOx), 2010 U.S. Dist. LEXIS 130529, 2010 WL 4916634 *2-3 (C.D. Cal. Dec. 1, 2010) (using paralegal rates of $229.50 and $202.50 to calculate fees).

In all, Class Counsel has provided six (6) declarations from experienced complex/class action counsel who attest to the reasonableness, and in fact the lower end of the spectrum, of the hourly rates sought, a national publication's billing survey establishing many California firms (of which several are based in Southern California) which charge hourly rates higher than those sought here in addition to numerous published decisions from the Ninth Circuit and the Central District awarding hourly rates much higher than those sought by Class Counsel. Given the plethora of authority provided and the lack of opposition to such rates by the Defendant or the Settlement Class Members, this Honorable Court would be justified in holding that the hourly rates sought by Class Counsel are reasonable and confirm said rates.

## C.   A Risk Multiplier of 3.228 is Warranted, Justified and Commensurate with Multipliers Applied to Other Class Actions Within the Ninth Circuit

"After computing the lodestar figure, the district court may then adjust the figure upward or downward to account for several factors including the quality of representation, the benefit obtained for the class, the complexity and novelty of

the issues presented, and the risk of nonpayment.  *Hanlon*, 150 F. 3d. at 1029. This upward adjustment is commonly referred to as a "multiplier" or "risk multiplier."   In fact, "*[i]t is an abuse of discretion to fail to apply a risk multiplier*, however, when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." *Fischel v. Equitable Life Assurance Society of the U.S.*, 307 F. 3d. 997, 1008 (2002)(emphasis added).  Here, a multiplier is warranted.  Counsel did take the case with the expectation that this Honorable Court would utilize its discretion to award Counsel for their efforts given such a risky case and Counsel is not receiving that risk enhancement by way of their hourly rates given the very fact that Counsel's hourly rates *are lower* than those sought by similar counsel in this district.  See *Supra*.

Class Counsel's lodestar figure is $185,841.00.[4]  *See* Exhibit A; Plaintiff's opening brief.  Thus, Class Counsel seeks a very modest 3.228 multiplier, which is reasonable given the results obtained and is in line with multipliers awarded by courts within the Ninth Circuit and elsewhere.   *See, e.g.,Vizcaino v. Microsoft Corp.* 290 F.3d 1043, n.6 (9th Cir. 2012) (upholding lodestar multiplier of 3.65 after surveying lodestar multipliers and "finding a range of 0.6–19.6, with most (20 of 24, or 83%) from 1.0–4.0 and a bare majority (13 of 24, or 54%) in the 1.5–3.0 range"); *Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (upholding a lodestar multiplier of 6.85); *In re Vitamin Cases*, *supra*., 2004 WL 5137597 at *14 ("The Court finds that the requested multiplier of 1.99 is low compared to many multipliers awarded in similar litigation."). *See Also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving 3.65 multiplier); *Keith v. Volpe,* 86 F.R.D. 565, 575-77 (C.D. Cal.

---

[4] It should be noted that given Counsel's sound billing discretion, supra, resulted in a lower lodestar figure than had Counsel chosen not to reduce hours or refrain from billing hours altogether.  As such, an increased lodestar figure would necessarily reduce the amount of the Risk Multiplier sought in this matter.

1980) (awarding multiplier of 3.5); *In re Beverly Hills Fire Litigation*, 639 F. Supp. 915,  (E.D. Ky. 1986) (awarding multiplier of 5 for lead counsel); *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (approving 5.3 multiplier).

**1.     The Law Offices of Todd M. Friedman, P.C. Provided An Excellent Quality of Representation to the Settlement Class**

The reputation, experience, and ability of Class Counsel were essential to the success of this litigation. As noted in the accompanying declarations attached to Counsel's opening brief, Class Counsel have extensive experience in consumer litigation generally and in the class action context. Their skills in developing the factual and legal record and settling the case were essential to achieving this result.  Moreover, Class Counsel's history of aggressive, successful prosecution of consumer class actions made credible their commitment to pursue this litigation until it provided a fair result for the Class.   Through their skill, reputation, and ability, a substantial result was obtained.   Thus, the 3.228 multiplier is warranted.

**2.     Class Counsel Obtained Favorable and Successful Results for the Settlement Class**

As a direct result of Class Counsel's time, efforts and skills, the Settlement Class has obtained rather favorable and successful results in the form of more than $5 million dollars in common fund benefits.  Each and every Settlement Class Member who submits a claim will receive a combined average value of $40.00 as a result of receiving an automated text message to his or her cellular telephone.  This becomes an especially successful result given the nature of the alleged violative conduct engaged by the Defendant (i.e., sending text messages) which resulted in little, if any, actual damages or expense to the Settlement Class Members as most consumers have unlimited text messaging cellular telephone

plans and those who do not would have incurred a nominal charge of likely 10 cents or less for receipt of the text.  Further, Class Counsel also obtained a two-year injunction against Defendant by which Defendant has changed its business marketing practices and will no longer send unsolicited non-confirmatory text messages to cellular telephones, which not only benefits the Settlement Class but also benefits the general public at large.

Also, all Settlement Class Members who submit claims are entitled to the settlement benefits without having a *pro rata* distribution of benefits.  Each and every Settlement Class Member will receive either free tickets or savings vouchers and the value of the tickets or the savings vouchers do not ultimately begin to reduce in the event of a large number of claims.  At the same time, Class Counsel negotiated a fee award wholly separate from the Settlement Benefits, thus ensuring that the Settlement will not be reduced in any fashion as a result of Class Counsel's compensation for their efforts.

Finally, as the Court recognized in *Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1175 (C.D. Cal. 2010), "[p]erhaps the best barometer of whether the benefit obtained for the class was fair and reasonable is the perception of class members themselves." Of the more than 130,000 potential Class Members, there is not a single objector and only a single person has opted out of the Class. Thus, "this factor weighs in favor of a multiplier." *Id*.  Thus, the requested 3.228 multiplier is warranted.

### 3.    The Complexity and Novelty of the Claims

While Class Counsel were confident in their ability to succeed at class certification and at trial, success was by no means guaranteed, especially considering Defendant's substantial opposition and the complexity of the issues involved. In fact, the Federal Communications Commission has issued at least 4 declaratory rulings interpreting the TCPA since 2008.  *See* http://transition.fcc.gov/cgb/policy/telemarketing.html.  The claims in this case

involved numerous issues of law that were complex and were novel (i.e., whether the equipment used constitutes an ATDS, whether and by what means putative class members consented to calls on their cell phones, and how to resolve any prior express consent issues on a class-wide basis).

Furthermore, this particular action proved to be rather complex and/or novel considering that a nearly identical TCPA class action against the Los Angeles Lakers was dismissed at the pleading stage.  *See Emanuel v. Los Angeles Lakers, Inc.*, 2013 WL 1719035 (C.D. Cal. April 18, 2013).  What is more, another factor in making this action difficult was the fact that the putative class members in essence provided their cellular telephone numbers to Defendant by way of voluntarily sending a text message from their own phone to Defendant. Unlike other TCPA class actions, this particular case was not an instance where a defendant buys a list of "leads" and begins mass dialing/texting/faxing consumers.  Nonetheless, Class Counsel took on a case with a relatively untested theory of liability under the TCPA and brought it to a successful conclusion. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (affirming enhanced fee where counsel "pursued this case in the absence of supporting precedents" and "against [defendant's] vigorous opposition throughout the litigation").  Thus, the requested 3.228 multiplier is warranted.

### 4.    The Risk of Nonpayment Was Very Real

Coupled with the discussion of complexity and novelty above, because Class Counsel agreed to prosecute this case on a contingency with no guarantee of ever being paid, they faced substantial risk[5] throughout this proceeding. Plaintiff's counsel shouldered the risk of non-payment by taking the class action suit on a contingency fee basis.

---

[5] "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Munoz v. UPS Ground Freight, Inc.*, 2009 U.S. Dist. LEXIS 48755, 11 (N.D. Cal. June 5, 2009) (quoting *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004)).

Indeed, "[c]ourts have split on class certification in TCPA cases, increasing the risk of maintaining the class action through trial." *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413, *4 (W.D. Wash. Sept. 17, 2012). In *Connelly v. Hilton Grand Vacations Company, LLC*, Case No. 12-cv-599-JLS (MDD), Hon. Judge Sammartino denied the plaintiff's motion for class certification under the TCPA.   In so holding, Judge Sammartino stated that "It is likely that each individual received a different amount of information regarding how his cell phone number would be used and there is at least a non-trivial possibility that some class members expressed consent in a manner that was colored by these circumstances.   This diversity suggests that the issue of consent should be evaluated individually, rather than on a classwide basis." *Id*. at 6.   Similarly, Judge Sammartino recently denied class certification in another TCPA class action entitled *Smith v. Microsoft Corporation*, Case No. 3:11-cv-1958-JLS (BGS).   Thus, although Plaintiff believes his case and any proposed class to be certified would be distinguishable from both *Connelly* and *Smith*, the current and ever changing landscape of the TCPA, especially in the class action context, would have proven a challenge for Plaintiff at the class certification stage, thus further solidifying the risk involved in undertaking this litigation by Class Counsel, after all, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (citation omitted). Thus, the risks and contingent nature of this TCPA class action justifies the 3.228 multiplier.[6]

---

[6] "Indeed, '[i]ndividual actions by . . . class members would be expensive and time-consuming for the parties and the Court and would create the risk of conflicting decisions.'" *Lo v. Oxnard European Motors, LLC*, 2011 U.S. Dist. LEXIS 144490, 10 (S.D. Cal. Dec. 15, 2011) (quoting *Duran v. Challenger Sheet Metal, Inc.*, No. 10cv2643, 2011 U.S. Dist. LEXIS 134363, at *8-9 (S.D. Cal. Nov. 21, 2011)). Also, the court in *ESI Ergonomic Solutions*, *supra*, 203 Ariz. 94 [50 P.3d 844] denied a motion to certify a TCPA class action, in part because the court considered the potential damages to be too high—between $45 million and $135 million.

### 5.      Preclusion/Inability to Accept New or Other Cases

The Law Offices of Todd M. Friedman, P.C. is a boutique law firm focused on consumer law litigation.  *See* Decl. of Todd M. Friedman.  In all, the firm consists of three (3) attorneys: founding and sole partner Todd M. Friedman, senior associate Nicholas J. Bontrager and junior associate Suren N. Weerasuriya in addition to two (2) paralegals, Erika Campany and Jason Rea.  *Id*. Additionally, Todd M. Friedman is solely responsible for the intake review and consultation of *each and every* potential client who seeks representation by the firm.  *Id*.  On that basis alone, Mr. Friedman's 157.8 hours incurred in litigating this case precluded Mr. Friedman from reviewing and consulting with dozens of potential clients thus precluding the firm from taking dozens of new cases during the past 18 months.  *Id*.

Further, as evidenced by Class Counsel's Statement of Services, the instant class action litigation required the time and efforts of all five (5) members of the firm.   In particular, the two most senior attorneys, Mr. Friedman and Mr. Bontrager, incurred 95% of the total time spent litigating this case.  *Id*.  The firm as a whole incurred well over four-hundred hours of time litigating this case to a successful conclusion.  A natural result of the significant time expended over the past eighteen months, of course, is that the firm was at times unable to accept new cases as the firm's personnel and most senior attorneys, including the founding partner himself, were constrained by the time necessarily required to successfully prosecute this case on behalf of Ari Friedman and the more than 130,000 Settlement Class Members.

Based upon the foregoing, should this Court elect to utilize a lodestar cross-check to determine the reasonable of the requested fee award, this Honorable Court can conclude that Class Counsel's reasonable lodestar figure is $185,841.00 and due to the factors discussed *supra*, a risk multiplier of 3.228 is warranted, justified and in line with numerous other courts within the Ninth

Circuit, thus confirming the reasonableness of Class Counsel's requested fee award.

**VI.    CONCLUSION**

   For the foregoing reasons, Plaintiff respectfully requests the Court grant the requested award of attorneys' fees and costs incurred in the aggregate amount of $600,000.00, and an incentive payment of $1,000 to the Representative Plaintiff.

   Respectfully submitted this 18th day of July, 2014.

   LAW OFFICES OF TODD M. FRIEDMAN, P.C.


   By:    /s/ Todd M. Friedman

      Todd M. Friedman
      Attorney for Plaintiff

**PROOF OF SERVICE**

I, Todd M. Friedman, state the following:

I am employed in Los Angeles, California; I am over the age of 18 and am not a party to this action; my business address is 324 S. Beverly Dr., Ste. 725, Beverly Hills, CA 90212.  On July 18, 2014, I served the following documents:

**PLAINTIFF'S SUBMISSION OF CLASS COUNSEL'S STATEMENT OF SERVICES; SUPPLEMENTAL BRIEFING RE: MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE INCENTIVE PAYMENT; COUNSEL'S STATEMENT OF SERVICES AND SUPPORTING DECLARATIONS; DECLARATION OF ARI MOSS; DECLARATION OF JOSHUA B. SWIGART; DECLARATION OF JOHN P. KRISTENSEN**

On the parties listed below:

ADRIANNE E. MARSHACK
E-mail:  AMarshack@katzyoon.com
4 Park Plaza, Ste. 1040
Irvine, CA  92614

By the following means of service:

[X]    **BY ELECTRONIC CASE FILING:** I filed the submitted the document listed above via the court's Electronic Case Filing (ECF) system which provides electronic mail (email) service of the listed document directly to the party listed above to his/her "email address of record."

[X]    **STATE:** I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on July 18, 2014, at Beverly Hills, California.

By: _/s/ Todd M. Friedman_
        Todd M. Friedman