UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARI FRIEDMAN, INDIVIDUAL, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>vs.<br><br>LAC BASKETBALL CLUB, INC.,<br><br>Defendant. | CASE NO. CV 13-00818 CBM (RZx)<br><br>ORDER GRANTING ATTORNEY'S FEES |

The matter before the Court is Plaintiff's Unopposed Motion for Attorney's Fees, Costs, and Class Incentive Payment (the "Motion"). (Dkt. 65.)

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227(b), the Telephone Consumer Protection Act ("TCPA").

## II. FACTUAL AND PROCEDURAL BACKGROUND

The case before the Court arose as a class-action brought by Ari Friedman

1

("Lead Plaintiff") against LAC Basketball Club, Inc., a corporation that owns and operates the Los Angeles Clippers professional basketball team ("Defendant"). Lead Plaintiff attended a Clippers basketball game in or around September 11, 2012. (Compl. ¶ 13.) While at the game, Lead Plaintiff sent a text message to a number that was broadcasted by the home sports announcer. (*Id.* ¶ 14.) Lead Plaintiff's purpose for sending this text message was to have his personal message displayed on the scoreboard. (*Id.* ¶ 16.) In the days after attending the basketball game, Lead Plaintiff received text messages from an automated dialing system without Lead Plaintiff's express consent. (*Id.* ¶ 18-23.) Lead Plaintiff alleged that, by causing these text messages to be sent, Defendant violated of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227. (*Id.* ¶ 23.) Plaintiff also alleged that Defendant similarly violated the rights of 130,000 other individuals who attended Clippers basketball games (the "Class").

Plaintiffs filed a Complaint on February 6, 2013. (Dkt. 1) On March 6, 2014, Plaintiffs filed an unopposed Motion for Order for Preliminary Approval of Class Action Settlement. On June 2, 2014, Plaintiffs filed an unopposed Motion for an Order Granting Final Approval of Class Action Settlement. (Dkt. 49, 64.) The Court granted both of these motions. Plaintiffs' attorneys ("Class Counsel") filed the instant Motion for Attorney Fees, Costs, and Class Representative Payment. (Dkt. 65.) Class Counsel requests a fee of $600,000, the upper limit of the fees and costs agreed upon by the parties in the Settlement Agreement.

## III. ANALYSIS

### A. Attorney's Fees are Permitted

Federal Rule of Civil Procedure 23(h) permits the award of reasonable fees in a class action if authorized by law or the agreement of the parties. Fed. R. Civ. P. 23(h). The Court finds that Class Counsel is entitled to reasonable attorney's fees under the Settlement Agreement. This Court now must determine what

constitutes a "reasonable" attorney's fee.

### B. Determining a Reasonable Attorney's Fee

In the class-action settlement context, "[b]ecause the attorneys seek fees on their own behalf, which may be contrary to their clients' interests, the district court must 'look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid.'" *Fischel v. Eq. Life Assur. Socy. of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (quoting *Florida ex rel. Butterworth v. Exxon Corp. (In re Coordinated Pre-trial Proceedings in Petroleum Prods. Antitrust Litig.)*, 109 F.3d 602, 608 (9th Cir.1997)). The Court must avoid permitting a "windfall" for Plaintiff's counsel. *Id*. at 1007.

Generally, reasonable attorney's fees are guided by the lodestar analysis which is calculated as "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). However, in class-actions, "district courts have the discretion to calculate attorney's fees by either the lodestar or percentage-of-the-fund approach." *Fischel* 307 F.3d at 1007. "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Florida ex rel. Butterworth,* 109 F.3d at 607.

The Class Action Fairness Act ("CAFA") governs the calculation of attorney's fees for "coupon settlements" in class actions. 28 U.S.C. § 1712. Congress termed non-cash settlements "coupon settlements," and CAFA's legislative history suggests that any non-cash benefit, even one providing free products or services, constitute a coupon settlement. *See* 109 S. Rpt. 14 (2005) (describing settlements in which class members received free benefits, such as free golf balls or service contracts, as examples of coupon settlements). CAFA provides that "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class

counsel that is attributable to the award of the coupons shall be based on the value to the class members of the coupons that are redeemed." 28 U.S.C. §1712(a). CAFA further mandates: "[i]f a settlement gives coupon and equitable relief and the district court sets attorneys' fees based on the value of the entire settlement, and not solely on the basis of injunctive relief, then the district court must use the value of the coupons redeemed when determining the value of the coupons part of the settlement." *In re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1184 (9th Cir. 2013) (interpreting the statutory language of CAFA and vacating a district court's opinion which awarded lodestar fees based on the combined value of injunctive and coupon relief because the district court failed to analyze the redemption value of the coupons). Specifically, the Ninth Circuit instructs: "[t]he practical effect of §1712(c) is that the district court must perform two separate calculations to fully compensate class counsel. First, under subsection (a), the Court must determine a reasonable contingency fee based on actual redemption value of the coupons awarded. Second, under subsection (b), the court must determine a reasonable lodestar amount to compensate class for any non-coupon relief obtained." *Id.* at 1184-85.

### 1) The Common Fund Approach Will Not Be Used

The United States Supreme Court has "consistently recognized that a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In Re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d. 935, 942 (9th Cir. 2011). This method of calculating attorney's fees is referred to as the "common fund" or the "percentage-of-the-fund" approach. A common fund attorney's fee is calculated by taking a percentage of the total amount offered by a defendant in settlement. This approach requires that the settlement "creates a large fund for distribution to the

class." *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 , 1029 (9th Cir. 1998). When using the common fund approach, an attorney's fee amounting to twenty-five percent of that common fund is accepted as the "benchmark" of reasonableness. *See Vizcaino v. Microsoft Corp.*, 290 F.3d. 1043, 1048-50 (9th Cir. 2002).

Class Counsel urges this Court to use the common fund approach for analyzing its fee request; however, the settlement before the Court provided only coupons and equitable relief, which makes the common fund approach impractical. *See In re HP Inkjet Printer Litig*., 716 F. 3d at 1179 ("[W]here class counsel is paid in cash, and the class is paid in some other way…comparing the value of the fees with the value of the recovery is substantially more difficult"). The Court therefore turns to CAFA for guidance in determining a reasonable fee.

**2)   Reasonable Contingency Fee Based on Redemption Value**

Under the Settlement Agreement, Defendant compensated class members who made valid claims (751 individuals) with either (a) two vouchers to certain Clippers' basketball games, or (b) one voucher to a Clippers' basketball game and one $20 coupon to purchase merchandise at the Clippers store. Class Counsel declares that the total benefit for each Class member at $40 (each ticket having a face value of between $15-25, and the merchandise coupon having a face value of $20). (Declaration of Nicholas J. Bontrager in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Bontrager Decl."), ¶ 4 (Dkt. 49-3.)). Therefore, pursuant to Class Counsel's calculations, the total redeemed value for the 751 claimants was $30,040. (*See* Declaration of Lacy Racines in support of Plaintiffs Motion for Order Granting Final Approval of Class Action Settlement, ¶ 17 (Dkt. 64-3).) This Court does not have evidence of other factors that might reduce the value of the coupons provided to the Class, such as the dates and seat restrictions for the Clippers' game tickets or the availability and

1  desirability of merchandise from the Clippers' store.  The Court therefore accepts
2  the redemption value of the coupon settlement as $30,040, and awards 25% of this
3  redemption value ($7,510) as a fee attributable to the redemption value of the
4  coupons.  *See* 28 U.S.C. §1712(a).

5          **3)      Reasonable Lodestar Based on Injunctive Relief Obtained**

6  Under CAFA, the Court must determine a reasonable lodestar amount to
7  compensate class counsel for any non-coupon relief obtained.  *In re HP Inkjet*
8  *Printer Litig.*, 716 F.3d. at 1185; 28 U.S.C. §§ 1712(b)(c).  This lodestar amount
9  can be further adjusted upwards or downwards using an appropriate multiplier.  *Id*.
10 In the Settlement Agreement, Class Counsel obtained a 24-month injunction for
11 the benefit of the class and for the general public.  (Bontrager Decl. ¶ 12.)  The
12 Settlement Agreement enjoined Defendant from sending "non-confirmatory"
13 autodialed text messages to cellular telephones.  (*Id*.)

14                  **(a) Class Counsel's Lodestar Calculation is Reasonable**

15 Under the lodestar method, the Court multiplies a reasonable number of
16 hours by a reasonable hourly rate. *Hensley*, 461 U.S. at 433.  "Reasonable hours"
17 are those "reasonably necessary to perform the legal services for which
18 compensation is sought." *Pennsylvania v. Delaware Valley Citizens' Council for*
19 *Clean Air*, 478 U.S. 546, 553 (1986) *supplemented*, 483 U.S. 711 (1987).  Once
20 the Court determines the reasonable hours, the Court "must determine a
21 reasonable hourly rate considering the experience, skill, and reputation of the
22 attorney requesting fees." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210
23 (9th Cir.1986), *amended,* 808 F.2d 1373 (9th Cir.1987).  The Court "should
24 calculate this reasonable hourly rate according to the prevailing market rates in the
25 relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984).

26 The Court finds that Counsel's 438.7 expended hours were reasonably
27 and necessarily incurred.  The Court similarly finds that the following hourly rates
28

are reasonable: $495/hr for Todd M. Friedman, $395/hr for Nicholas J. Bontrager, $250/hr Suren N. Weerasuriya and $150/hr for paralegals Erica Campany and Jason Rea. Based on the evidence provided, the Court finds that the reasonable lodestar amount is $185,841.00.

### (b) A Modest Lodestar Enhancement is Justified

A lodestar figure is "presumptively reasonable." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988). However, once the lodestar is calculated, the Court must consider whether it should further adjust the fee to ensure reasonableness. *In re Bluetooth*, 654 F.3d at 941; *see also In re HP Inkjet Printer Litig.*, 716 F.3d at 1183 (finding that, under CAFA, "a court may, in its discretion, apply an appropriate multiplier to any lodestar amount it awards…for obtaining non-coupon relief"). If the Court finds factors warranting an upward adjustment, the Court may apply an "enhancement" also known as a "multiplier" to the lodestar amount. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1301 (9th Cir. 1994). The Court analyzes factors including whether there was a risk of non-payment, the results obtained for the class, and the presence or absence of class member objections. *See Fischel*, 307 F.3d at 1007-08; *see also Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975) (enumerating factors that bear on whether a court should deviate from the lodestar figure). "[F]oremost" the Court considers the results obtained for the class. *In re HP Inkjet Printer Litig.*, 716 F.3d at 1190 (Berzon, J., dissenting).

Class Counsel requests a multiplier of 3.228 to the $185,841.00 lodestar for a total fee of over $599,900.00. The evidence and the record before the Court justify a more modest multiplier of the lodestar.

### (i) Multiplier Based on Contingency and Riskiness

Courts may apply a lodestar multiplier "when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their

hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." *Fischel*, 307 F.3d at 1008.

Class Counsel provides evidence that they took this case with the expectation that they would receive a fee enhancement should they prevail. Class Counsel also provide evidence that their requested rate does not reflect a risk of nonpayment. Class Counsel argues, "[w]hile Class Counsel were confident in their ability to succeed at class certification and at trial, success was by no means guaranteed, especially considering Defendant's substantial opposition and the complexity of the issues involved." (Dkt. 65 at 18:8-12.) The Court finds that there was substantial uncertainty about Plaintiffs' success in this case. Further, the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk they might be paid nothing at all for their work. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Therefore, the Court applies a 1.5 risk multiplier to Class Counsel's lodestar in calculating a reasonable fee, increasing the lodestar amount from $185,841.00 to $278,761.50.

### (ii) No Multiplier Based On "Outstanding Results"

Class Counsel argues that it obtained "outstanding results" for the class which justify a 3.228 multiplier of the lodestar. (Motion at 28:6.) "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. Only in "some cases of exceptional success" will an enhanced award be justified. *Id.* The Court finds no such "exceptional success" here.

This Court is not permitted to consider the value of the coupons in its lodestar analysis. *See In re HP Inkjet Printer Litig.*, 716 F.3d at 1185 (finding that the legislative history of §1712 "makes clear that CAFA only permits district

8

1   courts to award lodestar fees when those fees are not based on the value of
2   coupons") (internal quote omitted).  The Settlement Agreement provided class
3   members with the benefit of a 24-month injunction, enjoining Defendants from
4   sending "non-confirmatory" text messages to cellular telephone through an
5   automatic dialing system.  (Settlement Agreement at § 4, pgs. 9-10 of 60 (Dkt. 49-
6   1).)  This benefit serves the public interest by deterring future TCPA violations;
7   however, this is not an "exceptional" benefit to the Class.  There is no evidence
8   upon which the Court can conclude that Class Counsel obtained "exceptional
9   results" justifying a further enhanced lodestar award.  *See Perdue v. Kenny A. ex*
10  *rel. Winn*, 559 U.S. 542, 554 (2010) (To justify an enhancement, plaintiffs must
11  show "specific evidence" that "superior results…are the result of superior attorney
12  performance").

### (iii)   Class Counsel's Preclusion from Other Work

Class Counsel argues that the lodestar amount should be enhanced because Class Counsel was precluded from work.  Attorney Friedman declares that the "157.8 hours incurred in litigating this case precluded me from reviewing and consulting with dozens of potential clients thus precluding the firm from taking dozens of new cases during the past 18 months." (Friedman Decl. ¶ 29.) (Dkt. 65-1.)  Attorney Friedman's declaration does not provide any instances of business lost nor tie any lost business directly to this case. There is not sufficient evidence on which this Court can conclude that Class Counsel was precluded from work because of its work on this case.

### (iv)   No Multiplier Based On Few Class Objectors

Class Counsel argues that a high multiplier is warranted because there were few objections to the settlement made by the Class.  The Court does not find this to be a sufficient reason to apply an additional multiplier.  *See Fischel*, 307 F.3d at

9

1008 ("[T]he district court did not abuse its discretion by failing to increase the attorney's fee award to account for the class members' view of the requested fee award because (1) there was an early settlement, (2) the district court used the lodestar rather than the percentage-of-the-fund approach to calculate fees, and (3) the district court applied a 1.5 multiplier for counsel's 100 percent success rate.")

### C. Class Counsel's Costs

Class Counsel further requests costs totaling $1,215.00, including Class Counsel's share of the mediator's bill, filing fees, and service fees. (See Declaration Todd M. Friedman in support of Plaintiffs' Motion for Attorney's Fees and Costs and Class Representative Incentive Payment, ¶ 30, (Dkt. 65-1).) Generally, the Court requires that a party entitled to costs apply for such costs pursuant to this Court's Local rules. *See* L.R. 54-2. However, the Court finds that Class Counsel's requested costs are reasonable and within the proper scope of the Settlement Agreement

### D. Incentive Payment of $1,000 to Lead Plaintiff

Class Counsel requests that the Court award a $1,000 incentive fee to the Lead Plaintiff for serving as the class representative. The Court evaluates incentive payments individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions…" *Staton,* 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). The Lead Plaintiff actively participated in and brought this litigation on behalf of the class, read and discussed the terms of the Settlement Agreement with Class Counsel, and obtained a benefit for the Class. While there were no "exceptional" results, the Class received a reasonable benefit relative to the alleged harm suffered because of Lead Plaintiff's efforts. Therefore, the incentive Payment of $1,000 to the Lead Plaintiff is reasonable.

## I.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion, and ORDERS Defendant to pay $287,486.50. This award includes $7,510 attributable to the value of the redeemed coupons, $278,761.50 for obtaining injunctive relief, and $1,215.00 in costs. The Court further ORDERS Defendant to pay $1,000 as an incentive fee to the Lead Plaintiff.

**IT IS SO ORDERED.**

DATED: September 24, 2014

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

CC:FISCAL